ERIC W. BUETHER (*pro hac vice* admitted)
CHRISTOPHER M. JOE (*pro hac vice* admitted)
KENNETH P. KULA (*pro hac vice* admitted)
BLAKE W. BUETHER (*pro hac vice* admitted)
BUETHER JOE & CARPENTER, LLC
1700 Pacific, Suite 4750, Dallas, TX 75201
Telephone:    (214) 466-1270
Facsimile:    (214) 635-1842
Email:        Eric.Buether@BJCIPLaw.com
              Chris.Joe@BJCIPLaw.com
              Ken.Kula@BJCIPLaw.com
              Blake.Buether@BJCIPLaw.com

*Attorneys for Plaintiffs*
ELI ATTIA & ELI ATTIA ARCHITECT PC

JAMIE L. DUPREE (158105)
FUTTERMAN DUPREE DODD CROLEY MAIER LLP
180 Sansome Street, 17th Floor
San Francisco, California 94104
Telephone:    (415) 399-3840
Facsimile:    (415) 399-3838
Email:        jdupree@fddcm.com

*Local Counsel for Plaintiffs*
ELI ATTIA AND ELI ATTIA ARCHITECT PC

CHRISTIAN, SMITH & JEWELL, LLP
JAMES W. CHRISTIAN (*pro hac vice* to be submitted)
2302 Fannin, Suite 500
Houston, Texas  77002
Telephone:    (713) 659-7617
Facsimile:    (713) 659-7641
Email:        JChristian@CSJ-Law.com

*Attorneys for Plaintiffs*
ELI ATTIA & ELI ATTIA ARCHITECT PC

Professor G. Robert Blakey Emeritus*
(*pro hac vice* admitted)
Notre Dame Law School
7002 East San Miguel Avenue
Paradise Valley, AZ  85325
Telephone:    (574) 514-8220
*Of Counsel,* *For identification purposes only

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELI ATTIA AND ELI ATTIA ARCHITECT PC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GOOGLE LLC, FLUX FACTORY, INC., LARRY PAGE, SERGEY BRIN, SEBASTIAN THRUN, ERIC "ASTRO" TELLER, MICHELLE KAUFMANN, JENNIFER CARLILE, AUGUSTO ROMAN, NICHOLAS CHIM, AND DOES 1-100,<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 5:17-cv-06037-BLF<br><br>**PLAINTIFFS' MOTION FOR PARTIAL REMAND**<br><br>Date:        March 8, 2018<br>Time:        11:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:       Honorable Beth Labson Freeman<br><br>(Removed from the Superior Court of the County of Santa Clara, California, Case No. 2014-1-cv-274103)<br><br>State Action Filed: December 5, 2014 |

# TABLE OF CONTENTS

I.   BACKGROUND ........................................................................................................... 1

   A.   Plaintiffs' Claims Against Defendants.................................................................. 1

   B.   Procedural History in the California State Court .................................................. 4

II.   ARGUMENT ............................................................................................................... 7

   A.   The Applicable Legal Standard ........................................................................... 7

   B.   The State Law Claims of Misappropriation of Trade Secrets and Breach of Contract Raise Novel or Complex Issues of California State Law Appropriately Resolved by California State Courts ................................................... 8

   C.   The State Law Claims Predominate Over the Stayed RICO Claims ...................... 13

   D.   The *Gibbs* Factors Involving Judicial Economy, Convenience, Fairness, and Comity Strongly Favor Remand of the State Law Claims................................. 14

      1.   Judicial Economy............................................................................................ 15

      2.   Convenience................................................................................................... 16

      3.   Fairness .......................................................................................................... 16

      4.   Comity............................................................................................................ 17

III.   CONCLUSION............................................................................................................ 18

1

# TABLE OF AUTHORITIES

2

3

**Cases**

4

*A.B.C. Sand & Rock Co., Inc. v. Maricopa Cty.,*
    2017 WL 2609524 (D. Ariz. June 16, 2017) .................................................... 16

5

*Acri v. Varian Associates, Inc.,*
    114 F.3d 999 (9th Cir. 1997) ................................................................. 7, 8, 14

6

7

*Banner v. Himmelfarb,*
    858 F.2d 515 (9th Cir. 1988) .................................................................. 17

8

*Borough of West Mifflin v. Lancaster,*
    45 F.3d 780 (3rd Cir.1995) ..................................................................... 14

9

10

*Contemporary Servs. Corp. v. Landmark Event Staffing Servs. Inc.,*
    2017 WL 2540310 (C.D. Cal. June 12, 2017) .................................................. 17

11

*Enochs v. Lampasas County,*
    641 F.3d 155 (5th Cir. 2011) ............................................................. passim

12

13

*Gilbert v. Hensel Phelps Constr. Co.,*
    No. C–00–3941–VRW, 2003 WL 22384773 (N.D. Cal. Sept. 30, 2003) ....................... 15

14

*Graf v. Elgin, J. & E. Ry.,*
    790 F.2d 1341 (7th Cir.1986.) .................................................................. 15

15

16

*Growth Horizons, Inc. v. Delaware Cty., Pa.,*
    983 F.2d 1277 (3d Cir. 1993)..................................................................... 7

17

*Holley v. Harper,*
    2007 WL 580573 (S.D. W. Va. Feb. 21, 2007) .............................................. 14

18

19

*Inge v. Walker,*
    2016 WL 4920288 (N.D. Tex. Sept. 15, 2016)......................................... 13, 14

20

*Johnson v. Mariani,*
    2017 WL 2929453 (N.D. Cal. July 10, 2017)............................................ 14, 15

21

*Kaye v. Bd. of Trustees of San Diego Cty. Pub. Law Library,*
    612 F. Supp. 2d 1146 (S.D. Cal. 2007)...................................................... 13

22

23

*Kisaka v. Univ. of S. California USC,*
    2017 WL 1960636 (C.D. Cal. May 11, 2017) .............................................. 17

24

*Levin v. Commerce Energy. Inc.,*
    560 U.S. 413, 130 S.Ct. 2323 (2010).......................................................... 17

25

*Marshall v. MarOpCo, Inc.,*
    223 F. Supp. 3d 562 (N.D. Tex. 2017) ......................................................... 8

26

27

28

ii

*Millar v. Bay Area Rapid Transit Dist.*,
    236 F. Supp. 2d 1110 (N.D. Cal. 2002) ................................................................. 15, 17

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
    972 F.2d 580 (5th Cir. 1992) ..................................................................................... 16

*Perez v. Wells Fargo Bank, N.A.*,
    929 F. Supp. 2d 988 (N.D. Cal. 2013) ................................................................. 15, 17

*Spirit of Aloha Temple v. Cty. of Maui*,
    No. CV 14-00535 SOM/RLP, 2016 WL 347298 (D. Haw. Jan. 27, 2016) ..................... 17

*Steshenko v. Gayrard*,
    44 F. Supp. 3d 941 (N.D. Cal. 2014) .......................................................................... 17

*Thatcher Enterps. v. Cache Cnty. Corp.*,
    902 F.2d 1472 (10th Cir. 1990) .................................................................................. 17

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966).............................................................................. 8, 13, 14, 16

*Williams v. Montgomery Cty., Md.*,
    No. GJH-15-25, 2015 WL 4506806 (D. Md. July 23, 2015)........................................ 16

*Wisconsin Dept. of Corrections v. Schacht*,
    524 U.S. 381 (1998)..................................................................................................... 7

**Statutes**

18 U.S.C. § 1962 ............................................................................................................... 5

28 U.S.C. § 1367(c) .................................................................................... 7, 8, 13, 14, 15

Cal. Civ. Code, § 1640.................................................................................................... 12

Cal. Civ. Code, § 3426.................................................................................................... 10

PLEASE TAKE NOTICE that on March 8, 2018 at 9:00 a.m. in Courtroom 3, 5th Floor, United States District Courthouse, 280 South First Street, San Jose, California, before the Honorable Beth L. Freeman, Plaintiffs Eli Attia ("Attia") and Eli Attia Architect PC ("Attia PC") (collectively, "Plaintiffs") will and hereby move the Court to grant this Motion for Partial Remand.

## I.      BACKGROUND

### A.      Plaintiffs' Claims Against Defendants

Plaintiffs filed this action in California Superior Court on December 5, 2014, asserting state law claims for misappropriation of trade secrets, breach of contract and related causes of action against Google and several of its executives and employees (the Google Defendants") and a company formed by Google now called Flux Factory, Inc., and several of its executives (the "Flux Defendants").[1]

Plaintiffs allege in their original complaint that Attia is a world-renowned architect and majority owner and principal of Attia PC who developed a new technology called "Engineered Architecture" or "EA" which enables the creation of buildings that are more sustainable and of better quality in substantially less time and at greatly reduced costs compared to what is currently possible.   Plaintiffs allege that EA employs a method of utilizing intelligent "cells" and "supercells" that represent basic building blocks of architectural design to create buildings dramatically better, faster, with fewer resources, and with less energy and environmental impact than conventional methods."

In 2009, Attia began looking for a partner to commercialize his EA technology, and on or about July 25, 2010, he was approached by "Google[x]," an affiliate of defendant Google, Inc. ("Google"), through defendant Eric "Astro" Teller.   Attia then introduced his EA technology to Google executives Larry Page, Sebastian Thrun, and Sergey Brin.   On or about August 8, 2010,

---

[1]   This description of the background of the litigation is largely derived from the California state court's description of the litigation in its various orders addressing the Defendants' demurrers to Plaintiffs original and amended complaints.  Dkt. 1, Exs. B, D, F.

Google proposed and executed with Attia a Non-Disclosure Agreement ("NDA") permitting Google to use confidential information received from Attia to facilitate technical discussions concerning existing or future product development efforts by the parties.  Google also induced Attia to relocate with his family to Palo Alto in late 2010 so that he could work directly at Google's Mountain View campus.

After negotiations with Thurn and Teller on Google's behalf, on January 12, 2011, Attia and Attia PC entered into an Inbound Services Agreement ("ISA") with Google in which Attia agreed to share, for a limited time, his proprietary information and know-how and help Google translate this information into software, with Google providing software engineers and resources needed to prove the technology's viability and the industry's acceptance of it.  Based in the Google[x] development lab, the project was known as "Project Genie."  The ISA included a Statement of Work No. I (the "SOW"), in which Google acknowledged that the "Genie Project was inspired by [Mr. Attia's] experience and Pre-Existing Intellectual Property."  The SOW describes certain of Attia's proprietary information and identifies documents that contain Attia's proprietary information, including "All presentations & brochures," notes, emails, patents, and "other related intellectual property developed as of the SOW Effective Date."  Under the ISA, any "invention, improvement, development, concept, discovery or other proprietary information" that Attia had an interest in before January 12, 2011 remained his property.

Knowing it would need to license Attia's proprietary information, Google made a request for a non-exclusive, royalty-free, perpetual, irrevocable, worldwide license, which Attia rejected, and then proposed to pay royalties for a non-exclusive license, which Attia rejected as well. Ultimately, Attia agreed to grant Google a "non-commercial" and non-exclusive license to use Attia's proprietary information only up until the end of June 2012.  Google also agreed that, if the "proof of concept" for the Genie Project was successful and Google used any of Attia's proprietary information developing the project, Google would need to compensate Attia and obtain a non-exclusive license from Attia if it wanted to proceed with a commercial version of Genie.

Plaintiffs allege that Google used Attia's proprietary EA technology, including trade secrets associated with that technology to develop a prototype software system and to apply for patent protection of various processes used by that system.   Plaintiffs allege that Google eventually obtained patents based upon Attia's proprietary technology and trade secrets.  In a June 2011 confidential report provided by Defendant Thrun to Defendants Page and Brin, the Project Genie team described the Project Genie system using Attia's EA technology as "revolutionary technology for creating sustainable and environmentally friendly buildings, at a quality exceeding anything known," and estimated that the EA technology could halve construction costs of large buildings and skyscrapers, and that the technology had the potential of generating $120 billion in annual income for Google.

At the end of the proof of concept period, however, instead of Google compensating Attia for its use of his proprietary information during Project Genie, the Google Defendants squeezed Attia out of his own project and continued to develop a software system embodying Attia's proprietary information and know-how for their own benefit.  By doing so, Plaintiffs allege, the Google breached the ISA and SOW and the Google Defendants misappropriated Attia's trade secrets.  Plaintiffs allege the Google Defendants began implementing their plan to squeeze Attia out of the new venture in 2011, and that they pretended to kill the Genie Project by informing the Genie team and Attia on December 7, 2011, that Google would stop working on the project.  Plaintiffs allege that, within a week of being informed by Teller that Genie would end, Attia learned that Chim had been speaking to potential partners and investors and was telling them that Attia was no longer involved with Genie, and that he, Chim, had the right to continue the project without Attia.  On December 16, 2011, Chim stated to Attia, "I've got the license and control of Genie's IP."   On December 21, 2011, Teller sent an email to Attia containing a proposed agreement between Chim and Attia, stating that "the Genie team will continue."

In 2012, Google spun-off Project Genie into a new company, Defendant Flux Factory, Inc., ("Flux Factory"), which was co-founded by Defendants and former Project Genie team members Michelle Kaufmann, Jennifer Carlile, Augusto Roman and Nicholas Chim (collectively the "Flux

Factory Defendants").  Plaintiffs allege that Flux Factory has been using Attia's EA technology including trade secrets associated with that technology in products and services it sells.

**B.      Procedural History in the California State Court**

On January 8, 2015, Plaintiffs' lawsuit was transferred to the Honorable Judge Kirwan, at the Complex Civil Litigation Department 1, and the Court issued an order deeming the case complex and staying discovery.  Buether Declaration, Ex. A.

On May 29, 2015, the Google Defendants filed a demurrer challenging the legal sufficiency of most of Plaintiffs' claims as alleged.  After extensive briefing by the parties, Buether Declaration, Exs. B, C, D, the California state court held a hearing on July 31, 2015, and issued a detailed 15-page order denying the Google and Flux Defendants' legal challenges to Plaintiffs' misappropriation of trade secret and breach of contract claims.  Dkt. 1, Ex. B**.**  The state court also denied in large part the Defendants' challenge to the sufficiency of Plaintiffs' statement of their trade secrets.  *Id*.

Plaintiffs filed their First Amended Complaint on November 2, 2015, re-alleging in greater detail their claims for trade secret misappropriation and breach of contract.  *Id.* at Ex. C.  On December 15, 2015, the Google Defendants filed another demurrer challenging the legal sufficiency of Plaintiffs' breach of contract and related claims.  Buether Declaration, Exs. E, F, G. The California state court held a hearing on this demurrer on January 12, 2016 and issued an eight-page order on February 1, 2016, allowing Attia to amend his allegations regarding trade secret misappropriation to address the Google Defendants' statute of limitations defense and denying the Google Defendants' challenge to Plaintiffs' claim for breach of the ISA/SOW.  Dkt. 1, Ex. D**.**

On February 8, 2016, Plaintiffs filed their Second Amended Complaint.  *Id.* at Ex. E.  On March 17, 2016, the Google Defendants filed another demurrer challenging again the sufficiency of Attia's claim for misappropriation of trade secrets.  Buether Declaration, Exs. H, I, J. The Flux Defendants joined in the demurrer.  *Id.* at Ex. K. The state court held a hearing in this demurrer on August 12, 2016, and on August 22, 2016, issued a nine-page order denying the Defendants' challenges to the misappropriation of trade secrets claim.  Dkt. 1, Ex. F.

On August 26, 2016, Plaintiffs filed their Third Amended Complaint re-alleging their claims for misappropriation of trade secrets and breach of the ISA/SOW. *Id.* at Ex. G**.**  On September 26, 2017, Defendants answered the Third Amended Complaint. *Id.* at Ex. H.  Also on September 26, 2017, Google filed a cross-complaint against Plaintiff Eli Attia Architect, P.C. alleging two exclusively state law claims for breach of contract.  On October 26, 2016, Eli Attia Architect, P.C. answered Google's cross-complaint.

On May 12, 2017, the Court lifted the stay on discovery in this case that was imposed on January 8, 2015. *See* Ex. AN.  On May 12, 2017, the Google Defendants served Plaintiffs with a set of requests for documents, requests for admissions, interrogatories, and form interrogatories and Plaintiffs timely responded and produced documents and answers responsive to those requests.  Buether Declaration, Exs. M, N, O, P, Q, R, S.  On June 30, 2017, the Flux Defendants served Plaintiffs with a set of their own requests for productions, requests for admissions, and interrogatories. *Id.* at Exs. T, U, V, W, X, Y, Z, AA, AB, AC, AD, AE, AF.

Thereafter, the parties submitted to the state court a Joint Case Management Statement and proposed scheduling order. *Id.* at Exs. AG, AH. The Court held a case management conference and issued a Discovery and Scheduling Order. *Id.* at Ex. AI.  The Defendants filed an extensive motion to compel regarding their written discovery requests and the state court conducted a lengthy discovery conference addressing the issues raised in that motion. *Id.* at Ex. AJ.

On July 25, 2017 – 30 months after the lawsuit was filed – Plaintiffs filed a motion for leave to file an amended complaint adding claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, alleging that the Defendants, through Project Genie and other activities, operated an illegal enterprise for the purpose of misappropriating the trade secrets of Plaintiffs and other persons. *Id.* at Ex. AK.  Plaintiffs sought leave to assert these RICO claims based upon the search of publically available materials, including publications, court records, and other lawsuits against Google relating to Google's misappropriation of intellectual property.   Plaintiffs argued that the investigation uncovered substantial evidence showing that Defendants have engaged in a pattern of misconduct similar to

the conduct involving Defendants' misappropriation of trade secrets in this case giving rise to claims for violation of RICO.  *Id.*

The Google and Flux Defendants opposed Plaintiffs' motion, arguing that "Plaintiffs seek to commence an entirely new case against Defendants," and complained that, "[i]nstead of a (foundering) claim about how Defendants allegedly misappropriated Plaintiff Eli Attia's claimed trade secrets, Plaintiffs now want to assert RICO claims and pursue six other, entirely unrelated cases in which entirely unrelated parties accused one defendant here (Google) of misappropriating entirely unrelated technologies."  *Id.* at Ex. AL, pg. 1. The Defendants further argued that "[t]he new allegations in Plaintiffs' proposed Fourth Amended Complaint have nothing to do with their own case."  *Id*. at 3.

The state court issued a tentative ruling denying Plaintiffs' motion for leave to amend their complaint and add the RICO claims but, after holding a hearing on August 15, 2017, and receiving additional briefing from the parties, the state court issued an order on October 4, 2017, granting Plaintiffs' motion.  *Id.* at Ex. AN.  The state court's order observed that, "[i]n its tentative ruling and at the hearing on this matter, the Court expressed its concerns regarding plaintiffs' delay in seeking leave to amend and the prejudice that defendants would inevitably experience in conducting and providing new, expansive discovery on the proposed RICO claims **while** preparing the original claims for trial in September 2018."  *Id.* at 8.  "To address these concerns," the state court noted, "plaintiffs have proposed that the Court bifurcate the trial in this action so that the RICO claims are tried after the other claims, and stay all discovery on the RICO claims until the original claims are resolved. This proposal eliminates most of the prejudice that defendants would experience if amendment is permitted."  *Id*.  "On balance," the state court **stated**, "the Court finds that the prejudice to defendants will be relatively limited by plaintiffs' proposal."  *Id*.  The state court concluded that, "[b]ecause plaintiffs' proposal to bifurcate trial and stay discovery on the RICO claims until the other claims are resolved minimizes the prejudice to defendants, the Court will exercise its discretion to permit the amendment on this condition."  *Id*. at 9.  Plaintiffs Fourth

1
2
Amended Complaint – containing the new RICO claims – was deemed filed and served on

October 4, 2017. *Id.*.

3
4
On October 23, 2017, the Defendants removed the case to this Court.  Dkt. 1. Defendants'

5
removal is based solely on federal question jurisdiction created by the recent addition of Plaintiffs'

addition of the RICO claims to the case.  Dkt. 1 at 1, 3-4.

6
## II.      ARGUMENT

7
## A.      The Applicable Legal Standard

8
9
Defendants acknowledge that removal was based exclusively on federal question

jurisdiction and the parties are not diverse.  Therefore, this Court may not hear the state law claims

10
unless it exercises supplemental jurisdiction over those claims.  A court may decline to exercise

11
supplemental jurisdiction over state law claims if (1) the claims raise complex issues of state law,

12
13
(2) the claims substantially predominate over the claims over which the district court has original

jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or

14
15
(4) in exceptional circumstances. 28 U.S.C. § 1367(c).   [E]xercising discretion and deciding

whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in

16
17
subdivision (c) is implicated is a responsibility that district courts are duty-bound to take

seriously." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997), *supplemented*, 121

18
F.3d 714 (9th Cir. 1997), *as amended* (Oct. 1, 1997).

19
20
"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along

with federal-law claims when they are so related to claims in the action within such original

21
jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections*

22
*v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Under §

23
24
1367(c), "district courts may decline to exercise supplemental jurisdiction over a claim under

subsection ... if ... the district court has dismissed all claims over which it has original

25
jurisdiction." 28 U.S.C. § 1367(c)(3). In exercising its discretion, "the district court should take

26
27
into account generally accepted principles of 'judicial economy, convenience, and fairness to the

litigants.'" *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993)

28

(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).   *See also Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity.") (*internal citations omitted*).

**B.      The State Law Claims of Misappropriation of Trade Secrets and Breach of Contract Raise Novel or Complex Issues of California State Law Appropriately Resolved by California State Courts**

The state law claims of misappropriation of trade secrets and breach of contract in this case present novel or complex issues of State law under section 1367(c) and are appropriately resolved by the California state courts.

At the outset, it bears emphasis that, after this case was filed in California state court, the court deemed the case "complex" and the case was assigned to the Complex Civil Litigation Division of the court.   Buether Declaration, Ex. A. ("[t]he Court determines that the above-referenced case is **COMPLEX** within the meaning of California Rules of Court 3.400.") (emphasis in the original).   California Rules of Court 3.400(a) defines a "complex case" as "an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel."   Among the factors a court must consider in deciding whether an action is a complex case is whether the action is likely to involve "[n]umerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve."   California Rules of Court 3.400(b)(1).   The Defendants never challenged the designation of this case as "complex" under that rule.   Indeed, the docket for this case while it was pending in state court for nearly three years comprises approximately 256 docket entries involving, among other things, three separate demurrers to Plaintiffs' operative complaint comprising 382 pages of briefing and exhibits, discovery motions comprising 986 pages of briefing and exhibits, and seven hearings before the state court on these and other issues.   Buether Declaration, Ex. AN; *See Marshall v. MarOpCo, Inc.*, 223 F. Supp. 3d 562, 573 (N.D. Tex. 2017) ("Here, given the

voluminous exhibits, and the extensive state court docket, involving multiple hearings and nearly thirty-five pages of docket entries, this case is clearly complex.").

More specifically, Mr. Attia's misappropriation of trade secrets claims involve several novel and complex issues concerning whether aspects of his Engineered Architecture technology qualify as protectable trade secrets, whether Mr. Attia waived his right to assert these claims or should be estopped from doing so or is barred from doing so under the applicable California statute of limitations. Specifically, the Defendants contend that "Plaintiff Eli Attia is barred from claiming trade secret misappropriation as to any items of information that were readily ascertainable within the meaning of that defense under California's Uniform Trade Secrets Act at the time of the alleged misappropriation." Dkt. 1 – Exhibits H and I at 2. Mr. Attia denies this contention, arguing that his Engineered Architecture trade secrets were incorporated by various Defendants in patent applications in which Google described the claimed inventions as novel, not obvious and not disclosed to or known by the public. Buether Declaration, Ex. F at 13-16. Whether Mr. Attia can be barred from asserting his trade secret misappropriation claims on the ground that his asserted trade secrets were "readily ascertainable," when the Defendants claimed those trade secrets as novel and patentable inventions raises a complex issue of California trade secret law. The Defendants have not cited any California Supreme Court authority providing firm guidance regarding this issue. If they had such authority, they would have presented it to the California state court in connection with their plethora of demurrers filed in that Court.[2]

The Defendants also contend that the California statute of limitations bars Mr. Attia's misappropriation of trade secrets claim because "Mr. Attia was aware of facts such that he knew, or should have known, that Google was applying for patents containing information Mr. Attia contends constitute his trade secrets." Dkt. 1 – Exhibits H and I at 2. Mr. Attia has responded that this defense is without merit because, at the time Mr. Attia executed the assignments to Google of

---

[2]  The Fifth Circuit has determined that a Texas state-law claim is novel when there is no guidance from the Supreme Court of Texas. *See Enochs v. Lampasas County,* 641 F.3d 155, 159 (5th Cir. 2011).

1

2

3    his patent rights as one of the inventors of the inventions claimed in the patent applications Google

4    had filed, Google had previously promised to Mr. Attia in the ISA that it would make reasonable

5    efforts to negotiate reasonable compensation to Mr. Attia for its use of his proprietary information.

6    Buether Declaration, Ex. F at 14-16.  Specifically, the SOW provided that, if the Genie program

7    were successful and any of Attia's Pre-Existing Property was used to develop Genie, "Google, in

8    its sole discretion, will consider seeking an exclusive license and will make reasonable efforts to

9    negotiate for a license to a portion or all of the Pre-existing Property at mutually agreed upon price

10   and terms."  Thus, Mr. Attia contends that, at the time he executed the patent assignments, he did

11   not have reason to believe that Google would misappropriate his trade secrets.  Only when Google

12   later reneged on its promise to negotiate reasonable compensation to Mr. Attia for its use of his

13   trade secrets in the patent applications – conduct occurring within the statute of limitations period

14   – did Mr. Attia become aware of the Defendants scheme to misappropriate his trade secrets.

15   Buether Declaration, Ex. F at 16-17. The California state court denied the Defendants' demurrer

16   on this statute of limitations ground, pointing out that, "[i]n the SAC, Attia clarifies that the filing

17   of the patent applications was conditionally authorized pursuant to his agreements with Google,

18   and the alleged misappropriation occurred later—according to Attia, when the applications were

19   published without compensation to him," and finding that "the allegations of the SAC do not

20   clearly show that Attia should have suspected the Google Defendants would use his secrets

21   without his consent before late December 2011." Dkt. 1 – Exhibit F at 7.  The California state

22   court further pointed out that the Defendants' statute of limitation defense raised an issue

23   regarding whether Google had implied, conditional consent to use Attia's trade secrets during the

24   patent application process, thereby refuting the Defendants' argument that Mr. Attia should have

25   known that the Defendants were misappropriating his trade secrets during this process.  *Id.* (citing

26   Cal. Civ. Code, § 3426.1(b)(2)).  These complex legal issues regarding the application of the

27   California statute of limitations to Mr. Attia's misappropriation of trade secrets claims, however,

28   remain to be fully litigated and tried.  Again, the Defendants have not cited any California

Supreme Court authority providing firm guidance regarding this issue.  These complex legal issues should be resolved by the California state courts.

The Defendants further contend that Mr. Attia's misappropriation of trade secrets claims are barred by the doctrine of estoppel because "Plaintiffs identified the information now alleged to be trade secrets as publicly available information."  Dkt. 1 – Exhibit H and I at 2.  This defense refers to the Defendants' last minute, surreptitious addition of the words "Publicly available" to the heading for Exhibit A to the SOW identifying Mr. Attia's "Pre-existing Property" to evade its liability for misappropriating Mr. Attia's trade secrets.  In particular, during the negotiation of the terms of the ISA and SOW, the parties exchanged several drafts of the SOW throughout October, November and December of 2011.  Dkt. 1, Ex. E at ¶ 33.   Each draft of the SOW contained an "Exhibit A" which was entitled "Pre-existing Property" listing a variety of materials described as property owned by Mr. Attia prior to entering into any arrangement with Google to develop Project Genie.  *Id*.  By January 6, 2011, the parties had worked out all of the terms governing the parties' duties and obligations relating to carrying out Phase One of Project Genie.  *Id*.  Mr. Attia and his wife were finalizing their plans to move to Mountain View, California, near Google's headquarters, to work with Google on Project Genie.  *Id*.  The only contract language the parties continued to negotiate was the language describing the background and circumstances leading up to Google's decision to proceed with Project Genie.  *Id*. at ¶ 34.  Through January 10, 2011, the parties continued to exchange drafts of the ISA and the SOW.  *Id*.  Each of the drafts continued to contain an Exhibit A entitled "Pre-existing Property" listing materials owned by Mr. Attia prior to entering into any arrangement with Google to develop Project Genie.  *Id*.

On January 11, 2011, Google's in-house counsel distributed the final, revised draft of the ISA and SOW for the parties to review and approve.  *Id*. at ¶ 35.  In this final draft, however, Google's in-house counsel, for the first time, altered the heading on Exhibit A of the SOW and inserted the words "Publicly available" in front of the "Pre-existing Property" language which had been in every draft of the SOW since October 2010.  *Id*.  None of the Google personnel involved in the negotiation or drafting of the SOW mentioned the need or desire to alter the heading of

Exhibit A, or that it had been altered in this final draft. *Id.* Instead, the in-house Google lawyer stressed in her e-mail circulating the final drafts of the ISA and SOW that she made only a "few changes" without mentioning the first-time change to the heading of exhibit to the SOW. *Id.* Mr. Attia was unaware of this change to the heading of Exhibit A and continued to believe that his confidential and propriety information about Engineered Architecture technology was protected from unauthorized disclosure by Google pursuant to the NDA, as Google had previously represented to him. *Id.* The body of the ISA and SOW mentions Mr. Attia's "Pre-existing Property" at least 12 times without ever using the words "publicly available." *Id.*

Google contends that the last-minute alteration of the heading of Exhibit A by adding the words "publicly available" establishes that Attia's proprietary Engineered Architecture technology was publicly available and, therefore, not a trade secret. Buether Declaration, Ex. I at 2, 4-5, 12. Mr. Attia contends that, under California law, the caption or heading in a contract does not dictate its legal effect and that only when a contract is ambiguous on a point do courts even consider the language in a caption or heading and, even then, greater weight must be given to the operative contractual clauses of the agreement. *Id.* at 2. Mr. Attia also argues that, in this case, his "Pre-existing Property" is identified in the ISA as "proprietary information." Furthermore, Mr. Attia asserts that, given the guile by which Google inserted the "publicly available" language into the header on Exhibit A to the SOW, the Court should disregard those words pursuant to Section 1640 of the California Civil Code, which provides that "[w]hen, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." The California state court denied the Defendants' demurrer based on their contention that Mr. Attia is estopped from asserting misappropriation of trade secret claims in view of this added language, ruling that "defendants cite no authority for the bold proposition that mislabeling secrets as publicly available in a pre-litigation context is a conclusive admission." Dkt. 1 – Exhibit F at 7. The complex legal issue of whether Google's last-minute addition of the "Publicly available" language in the heading on

Exhibit A to the SOW can preclude Mr. Attia from contending that his claimed trade secrets are, in fact, secret remains to be litigated and should be resolved by California state courts.

These are but a few of the complex issues of California contract and misappropriation of trade secrets law that pervade this case and warrant that Plaintiffs' state law claims be remanded to California state court for resolution by that court. *See Kaye v. Bd. of Trustees of San Diego Cty. Pub. Law Library*, 612 F. Supp. 2d 1146, 1150 (S.D. Cal. 2007) ("The Court concludes that the Complaint's fifth cause of action raises a novel or complex issue of State law under section 1367(c) and is appropriately resolved by the state courts.").

## C.     The State Law Claims Predominate Over the Stayed RICO Claims

Under § 1367(c)(2), this Court may decline to exercise supplemental jurisdiction over a state-law claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).  "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."  *Gibbs*, 383 U.S. at 726.  "[T]he process of determining whether state law claims 'substantially predominate' over their federal counterparts is far from an exact science."  *Inge v. Walker*, 2016 WL 4920288, at *6 (N.D. Tex. Sept. 15, 2016).

In this case, Plaintiffs' state law claims for misappropriation of trade secrets and breach of contract substantially predominate over the recently added RICO claims which are predicted on Mr. Attia's claims for misappropriation of trade secrets and have been stayed pending the resolution of Plaintiffs' state law claims.  As explained above, this case had been pending in California state court for nearly three years and involved only complex state law based claims including claims for misappropriation of trade secrets and breach of contract.  Not until a few months ago did the state court allow Plaintiffs to amend their complaint to add the Federal RICO claims to this case, and did so only on the condition that all discovery regarding the RICO claims be stayed until the original state law claims are resolved, noting that "plaintiffs' proposal to bifurcate trial and stay discovery on the RICO claims until the other claims are resolved minimizes

the prejudice to defendants." Dkt. 1 – Exhibit L at 8-9. Plaintiffs have always acknowledged that Mr. Attia's state law misappropriation of trade secrets claim is a "key predicate act" to Plaintiffs' RICO claims. Buether Declaration, Ex. AO at 2 ("the parties will not incur any time or cost in connection with discovery relating to Plaintiffs' proposed RICO claims unless Plaintiff Attia first prevails on his misappropriation of trade secret claim. If Defendants prevail on that essential alleged predicate act, the RICO claims must be dismissed.").

Thus, as the case is presently postured, the state law claims not only predominate over the RICO claims, they are the only claims to litigate at this time. As the discussion above demonstrates, Plaintiffs' state law claims are factually and legally complex and involve a plethora of novel or complex issues. In addition, the Defendants have acknowledged that the remedies available to Plaintiffs with respect to their state law claims are substantial and nearly co-extensive with the remedies available to Plaintiffs in connection with their RICO claims. *Id.* at Ex. AL, pg. 14. ("Mr. Attia already has the opportunity to recover treble damages, fees, and costs on his existing UTSA claim.") *See Holley v. Harper,* 2007 WL 580573, at *5 (S.D. W. Va. Feb. 21, 2007) (Section 1367(c)(2) "should be invoked 'where a state claim forms the real body of the case, to which the federal claim is only an appendage.'") (quoting *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 789 (3rd Cir.1995)). Given that the RICO claims will not be litigated unless and until Mr. Attia prevails on his state law claim of misappropriation of trade secrets, the Court should remand Plaintiffs' state law claims back to California state court where those state law claims can appropriately be resolved by a California state court.

**D.    The *Gibbs* Factors Involving Judicial Economy, Convenience, Fairness, and Comity Strongly Favor Remand of the State Law Claims**

While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), that discretion is further informed by "judicial economy, convenience, fairness, and comity" – the "*Gibbs* factors." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Johnson v. Mariani*, 2017 WL 2929453, at *3 (N.D. Cal. July 10,

2017).  In this case, each of these factors strongly favor remand of the state law claims to the California state court.

### 1.    Judicial Economy

"Judicial economy [is] the essential policy behind the modern doctrine of pendent jurisdiction."  *Graf v. Elgin, J. & E. Ry.,* 790 F.2d 1341, 1347 (7th Cir.1986.)  *See also Millar v. Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1119 (N.D. Cal. 2002).  It is intended to avoid the wasteful duplication in parallel proceedings.  *Johnson v. Mariani*, 2017 WL 2929453, at *4 (N.D. Cal. July 10, 2017).

In this case, remanding the state law claims to state court would serve the interests of judicial economy.  This Court has expended only minimal resources on this case. This case is in its infancy, having been removed to this Court only a few months ago.  The Court has not ruled on any motions before considering this motion for partial remand.  The Court has not held a Case Management Conference.  The Court has not engaged in any substantial legal analysis regarding Plaintiffs' state law claims that would need to be duplicated or repeated if the Court remanded those claims to state court.  *See Perez v. Wells Fargo Bank, N.A.*, 929 F. Supp. 2d 988, 1006 (N.D. Cal. 2013) ("Defendants have each filed motions to dismiss the [Second Amended Complaint], but the Court has not yet ruled on either motion. The trial date is not imminent and, given the novelty of the [Second Amended Complaint], this Court has not performed a substantial amount of legal analysis that would need to be repeated by the state court. There would be no significant loss of judicial economy if this action were remanded.")  *See also Millar v. Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1119 (N.D. Cal. 2002) ("The Court has not performed any substantive legal analysis that will need to be duplicated or re-done by the state court. Accordingly, the factor of judicial economy weighs in favor of remand."); *Gilbert v. Hensel Phelps Constr. Co.*, No. C–00–3941–VRW, 2003 WL 22384773, at *3 (N.D. Cal. Sept. 30, 2003) (holding that remand was warranted under § 1367(c), even though the court had already "ruled on two motions to remand and one for summary judgment").  The state court, on the other hand has spent nearly three years carefully and extensively analyzing Plaintiffs' state law claims.

1

2       The California state court is better suited to rule on the merits of those claims than this

3   Court.  "Needless decisions of state law [by federal courts] should be avoided both as a matter of

4   comity and to promote justice between the parties, by procuring for them a surer-footed reading of

    applicable law." *Gibbs,* 383 U.S. at 726.

5       Furthermore, given that Plaintiffs' RICO claims are predicated on a successful outcome on

6   Mr. Attia's state law misappropriation of trade secrets claims, judicial economy would be

7   promoted by a remand of those claims for an initial decision by the state court regarding them

8   before this Court proceeds with the RICO claims.  *See A.B.C. Sand & Rock Co., Inc. v. Maricopa*

9   *Cty.*, 2017 WL 2609524, at *2–3 (D. Ariz. June 16, 2017) ("As a practical matter, and in the

10  interest of judicial efficiency, the administrative proceedings and the Arizona constitutional issues

11  should logically be resolved first; and thereafter, if the state court proceedings do not resolve all of

12  the issues between the parties, plaintiffs' federal civil rights claims can be addressed. Until the

13  underlying claims are resolved, it will be a waste of the parties' time and money to pursue the

14  federal civil rights claims.")  Also, given that discovery regarding the RICO claims is stayed

15  pending the outcome of Mr. Attia's state law misappropriation of trade secrets claims, there is no

16  danger of duplicative or inconsistent rulings by the state court and this Court.  Thus, remand of the

17  state law claims to state court will not render remand judicially uneconomical.

18      2.      **Convenience**

19      In addition, litigating this action in state court in Santa Clara County will not

20  inconvenience the Defendants.  Google and many of the other Google Defendants are located in

21  the Santa Clara County area and all of the Defendants have effectively litigated this action in the

22  Santa Clara County state court for nearly three years.  *See e.g.*, *Williams v. Montgomery Cty., Md.*,

23  No. GJH-15-25, 2015 WL 4506806, at *4 (D. Md. July 23, 2015).  The Santa Clara County state

24  courthouse is a few blocks from the courthouse for this Court.

25      3.      **Fairness**

26      The next factor, fairness, "concerns the prejudice to the parties that would arise from

27  dismissal." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588 (5th Cir. 1992).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants cannot provide any reasons why proceeding in a state court forum would be unfair to them or will deprive them of rights provided by this Court.  *See Perez*, 929 F. Supp. 2d at 1006 (finding that fairness factor did not weigh in either party's favor where "the state forum will provide just as fair a proceeding as the federal one").  *See also Contemporary Servs. Corp. v. Landmark Event Staffing Servs. Inc.*, 2017 WL 2540310, at *7 (C.D. Cal. June 12, 2017); *Kisaka v. Univ. of S. California USC*, 2017 WL 1960636, at *6 (C.D. Cal. May 11, 2017).

### 4.      Comity

Finally, as to comity, this factor weighs in favor of remand.  As discussed above, "[I]t is preferable . . . as a matter of comity (respect for our sister state institutions) for state court judges to apply state law to plaintiff's state-law claims."[8] *Millar v. Bay Area Rapid Transit Dist.*, 236 F. at 1120.  *See also Banner v. Himmelfarb*, 858 F.2d 515, 524 (9th Cir. 1988) ("[Principles of comity will be well-served by allowing the state courts to resolve claims solely of state law.");  *Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 958 (N.D. Cal. 2014) (finding that "dismissal promote[d] comity by allowing the California courts to interpret state law concerning the state laws in the first instance").  "Decisions of state law are best left to state courts."  *Contemporary Servs. Corp. v. Landmark Event Staffing Servs. Inc.*, 2017 WL 2540310, at *8 (C.D. Cal. June 12, 2017).  Comity recognizes that federal courts are courts of limited subject matter jurisdiction and are often not as suited as state courts to hear state law claims.  *Enochs v. Lampasas County,* 641 F.3d 155, 160 (5th Cir. 2011).  As another court explained:

> Comity presents another reason for this court to decline jurisdiction over this cross-system appeal. "Comity 'reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.'" *Levin v. Commerce Energy. Inc.*, 560 U.S. 413, 130 S.Ct. 2323, 2330 (2010). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enterps. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

*Spirit of Aloha Temple v. Cty. of Maui*, No. CV 14-00535 SOM/RLP, 2016 WL 347298, at *9 (D. Haw. Jan. 27, 2016).

---

17

1

2

### III.    CONCLUSION

3

The Court should remand Plaintiffs' state law claims because they raise complex legal

4

issues and predominate over the RICO claims which have been stayed and are predicated on Mr.

5

Attia's state law claims for misappropriation of trade secrets.  The *Gibbs* factors involving judicial

6

economy, convenience, fairness, and comity also strongly favor remand of the state law claims.

7

Given that federal courts are courts of limited subject matter jurisdiction and are often not as

8

suited as state courts to hear state law claims, and that needless decisions of state law by federal

9

courts should be avoided both as a matter of comity and to promote justice between the parties, by

10

procuring for them a surer-footed reading of applicable law, this Court should remand Plaintiffs'

11

state law claims to the state court that has spent nearly three years extensively analyzing them.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  December 29, 2017                    **BUETHER JOE & CARPENTER, LLC**


_/s/ Blake W. Buether_
Eric W. Buether (_pro hac vice_ admitted)
Christopher M. Joe (_pro hac vice_ admitted)
Kenneth P. Kula (_pro hac vice_ admitted)
Blake W. Buether (_pro hac vice_ admitted)
1700 Pacific Avenue, Suite 4750
Dallas, TX  75201
(214) 466-1274
(214) 635-2992 – Fax


Jamie L. Dupree (#158105)
**FUTTERMAN DUPREE DODD CROLEY MAIER LLP**
601 Montgomery Street, Suite 333
San Francisco, California 94111
(415) 399-3840
(415) 399-3838 – Fax


James W. Christian (_pro hac vice_ to be submitted)
**CHRISTIAN, SMITH & JEWELL, LLP**
2302 Fannin, Suite 500
Houston, Texas  77002
Telephone:  (713) 659-7617
Facsimile:  (713) 659-7641


Professor G. Robert Blakey Emeritus*
(_pro hac vice_ to be submitted)
Notre Dame Law School
7002 East San Miguel Avenue
Paradise Valley, AZ  85325
Telephone:  (574) 514-8220
_Of Counsel,_ *For identification purposes only

**Attorneys for Plaintiffs**
**Eli Attia and Eli Attia Architect PC**