1

2

3

4

5

6                     **UNITED STATES DISTRICT COURT**

7                     **NORTHERN DISTRICT OF CALIFORNIA**

8                              **SAN JOSE DIVISION**

9

10   ELI ATTIA, ET AL.,                        Case No.  17-cv-06037-BLF

11              Plaintiffs,                     **ORDER (1) GRANTING WITH LEAVE
                                                TO AMEND DEFENDANTS' MOTIONS**
12        v.                                    **TO DISMISS PLAINTIFFS' RICO
                                                CLAIMS IN THE FOURTH AMENDED**
13   GOOGLE LLC, et al.,                        **COMPLAINT; AND (2) DENYING
                                                PLAINTIFFS' MOTION FOR PARTIAL**
14              Defendants.                     **REMAND**

15                                              [Re:  ECF 30, 31, 38]

16

17

18        What began as an alleged trade secret misappropriation case brought by a prominent

19   architect against a world-renowned technology company has grown into an accusation that Google

20   LLC and its highest executives operated an illegal racketeering enterprise designed to steal and

21   profit from the stolen trade secrets of various inventors.  Plaintiffs Eli Attia ("Mr. Attia") and Eli

22   Attia Architect PC ("Attia PC") (collectively, "Plaintiffs") allege that Defendants Google LLC

23   ("Google"), Larry Page, Sergey Brin, Sebastian Thrun, and Eric "Astro" Teller (collectively,

24   "Google Defendants"), along with Flux Factory, Inc. ("Flux"), Michelle Kaufmann, Jennifer

25   Carlile, Augusto Roman, and Nicholas Chim (collectively, "Flux Defendants") (together with

26   Google Defendants, "Defendants") are liable for misappropriating Mr. Attia's "Engineered

27   Architecture" technology for their own benefit.  *See* Fourth Amended Complaint ("4AC"), Exh. M

28   to Notice of Removal, ECF 1-3.

United States District Court
Northern District of California

United States District Court
Northern District of California

According to Plaintiffs, this conduct was a regular day at the office for Defendants—who have allegedly conspired to induce inventors like Mr. Attia to disclose proprietary information about their technology by way of promises of investment or partnership with Google. *See, e.g.*, 4AC ¶ 113.  Once the inventors have handed over the information, Defendants allegedly disregard any non-disclosure agreements and file patent applications disclosing the trade secrets, effectively boxing-out inventors from the market for their own technologies. *Id.*  This conduct, Plaintiffs allege, constitutes a pattern of racketeering activity in violation of federal law. *Id.*  ¶¶ 111-197.

Defendants do not challenge the pleadings related to Plaintiffs' state law claims, which they have been defending against for several years in state court.  Rather, upon removing this action to federal court, the Google Defendants and Flux Defendants separately moved to dismiss Plaintiffs' five causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  *See* Google Mot., ECF 30; Flux Mot., ECF 31.  The Court held a hearing on Defendants' motions to dismiss on March 8, 2018.  At the hearing, the Court indicated that the RICO claims were far from sufficiently alleged.  The Court took the matter under submission to consider Defendants' potentially dispositive argument that Plaintiffs lack standing to pursue their RICO claims at all—which would render leave to amend futile.

Having considered the arguments presented at oral argument and in the briefing, as well as the submitted evidence and applicable law, the Court now GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND.  Should Defendants challenge the RICO claims in a subsequent pleading, Defendants may renew their standing arguments based on the anticipated amended allegations of continuing use.  The Court has also considered Plaintiffs' request to make two lawsuits out of one, and DENIES Plaintiffs' motion for partial remand.

## I.   BACKGROUND[1]

Although new to this Court, this litigation has a long history.  The Court begins with an overview of Plaintiffs' factual allegations related to Defendants' alleged misappropriation of Mr.

---

[1] Plaintiffs' factual allegations are taken from the operative Fourth Amended Complaint and are accepted as true for purposes of the motions to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

Attia's trade secrets and proprietary information, and then turns to the procedural history of this case.  Finally, the court reviews the newly added allegations underlying the RICO claims that form the basis for federal subject matter jurisdiction.

### A. Factual Background Underlying Trade Secret Claims

According to the allegations in the operative Fourth Amended Complaint, Mr. Attia is one of the world's leading and most innovative architects who has spent over 50 years developing a game-changing new technology that can fundamentally change the way buildings are created. 4AC ¶ 1.  Mr. Attia named his technology "Engineered Architecture" or "EA," and he considers EA technology to be his life's work.  *Id.* ¶¶ 1, 7, 73.

Plaintiffs allege that in 2009, around the same time that Mr. Attia was searching for a partner to develop the Engineered Architecture technology, Google co-founders Larry Page and Sergey Brin conceived of a secretive research and development facility to support projects unrelated to Google's core search business.  *Id.* ¶¶ 24, 25.  By 2010, this concept became "Google X," and Defendant Sebastian Thrun formed the unit and began to run its day-to-day operations. *Id.*  Thrun chose Defendant Astro Teller, a Google engineer, as his co-director at Google X.  *Id.* Page remained the head of Google X until he became CEO of Google, at which point Brin took over ultimate responsibility for Google X.  *Id.*

Plaintiffs allege that Defendants Thrun and Teller learned about Mr. Attia's Engineered Architecture in the summer of 2010, and that Teller approached Mr. Attia on July 25, 2010 about a potential partnership with Google X to develop the technology. *Id.* ¶ 26.  Mr. Attia gave Teller and Thrun a general overview of his Engineered Architecture concept, and on or about August 8, 2010, Google proposed and executed a Non-Disclosure Agreement ("NDA") with Mr. Attia that would permit Google to use confidential information received from Mr. Attia "to facilitate technical discussions concerning existing or future product development efforts by the parties."  *Id.* ¶¶ 26-27. With the NDA executed, Google allegedly induced Mr. Attia to relocate with his family to Palo Alto, California, to work at Google's Mountain View headquarters.  *Id.* ¶ 28.  Plaintiffs allege that even at this point in 2010, Defendants' conduct was part of scheme to induce Mr. Attia to divulge his trade secrets and proprietary information regarding Engineered Architecture in order to

United States District Court
Northern District of California

3

misappropriate the technology and abscond with Mr. Attia's intellectual property.  *See, e.g., id.* ¶¶ 27, 31.

In September 2010, Plaintiffs allege that Page and Brin authorized Google X to proceed with development of a software system to implement the Engineered Architecture technology.  *Id.* ¶ 30.  "Project Genie," as it became known, provided Mr. Attia with Google software engineers and resources in exchange for Mr. Attia sharing his trade secrets and other proprietary information to help Google develop a software system capable of implementing Engineered Architecture technology.  *Id.*[2]  Plaintiffs allege that Mr. Attia agreed to share this information with Google only on the condition that if the proof of concept program was successful and any of Mr. Attia's trade secrets were used to develop the ultimate product, Google would reasonably compensate Mr. Attia for the use of his property.  *Id.*

On January 12, 2011, Plaintiffs and Google entered into an Inbound Services Agreement ("ISA") and an associated Statement of Work ("SOW") agreement.  *Id.* ¶ 36.  In the SOW, Google acknowledged that the "Genie Project was inspired by [Mr. Attia's] experience and Pre-Existing Intellectual Property." *Id.* ¶ 37.  Exhibit A to the SOW describes certain proprietary information belonging to Mr. Attia regarding Engineered Architecture and identifies documents containing such information.  *Id.*  Pursuant to the ISA, and consistent with reassurances from Thrun, any "invention, improvement, development, concept, discovery or other proprietary information" that Mr. Attia had an interest in before January 12, 2011 remained his property.  *Id.*

During the ISA/SOW negotiations, Mr. Attia rejected Google's requests for a nonexclusive, royalty-free, perpetual, irrevocable, worldwide license, as well as a royalty for a non-exclusive license. *Id.* ¶ 38.  Ultimately, the parties agreed in the ISA that Mr. Attia would provide to Google a "non-commercial" and nonexclusive license to use his proprietary information only until "June 31 [*sic*], 2011." *Id.*  Plaintiffs allege that the Project Genie team continued to grow, and Mr. Attia spent the next five months working with Google employees to teach them "everything about the Engineered Architecture technology." *Id.* ¶¶ 40-41.

---

[2] Defendant Nicholas Chim was appointed team leader for Project Genie.  *Id.* ¶¶ 36, 40.

1        According to Plaintiffs, Google was so satisfied with the viability of Engineered

2    Architecture technology that Google applied to the United States Patent and Trademark Office

3    ("PTO") for several patents containing numerous claims reciting Mr. Attia's trade secrets that

4    were disclosed by Mr. Attia pursuant to the NDA and the ISA/SOW. *Id.* ¶¶ 46-47.  Google

5    extended Project Genie for an additional seven months, and discussed with Mr. Attia the

6    possibility of spinning off Project Genie into a separate company—going so far as to offer Mr.

7    Attia a seven percent (7%) interest in the new company for his proprietary information, and an

8    additional eight percent (8%) as a co-founder of the new venture. *Id.* ¶ 52.

9        While Mr. Attia was under the impression that Google planned to compensate him for his

10   trade secrets and proprietary information, Plaintiffs allege that Defendants Google, Page, Brin,

11   Thrun, Teller, Kaufmann, Carlile, Roman, and Chim (who were members of the Project Genie

12   team at the time), plotted to squeeze out Mr. Attia and misappropriate his Engineered Architecture

13   technology.  *Id.* ¶¶ 53-55.  Google allegedly pretended to kill Project Genie via an email on

14   December 7, 2011 when Defendant Chim informed the team that he was "torpedoing" Project

15   Genie, and Defendant Teller wrote to Mr. Attia "I'm very sorry Genie will end.  It would have

16   been a great thing to make for the world."  *Id.* ¶ 57.  According to Plaintiffs, this was just a cover

17   story to mask Defendants' plan to steal and exploit Mr. Attia's Pre-existing Property, including his

18   Engineered Architecture trade secrets which he had disclosed to Google pursuant to the NDA and

19   ISA/SOW. *Id.*

20       Plaintiffs allege that within a week of the December 7, 2011 announcements, Mr. Attia

21   learned that rather than shutting down Project Genie, Google was surreptitiously taking steps to

22   develop and promote Genie further by speaking to potential partners and investors—including

23   showing the "prototype" video utilizing Mr. Attia's Pre-existing Property, and falsely representing

24   to third parties that Google owned the rights to Mr. Attia's proprietary information, including his

25   trade secrets.  *Id.* ¶¶ 58-62.  Plaintiffs allege that Defendants Google, Page, Brin, Teller, Thrun and

26   Carlile formed a new company to continue to develop the Genie technology, which they called

27   Vannevar Technology.  *Id.* ¶ 67.  Vannevar changed its name to Flux Factory, Inc. ("Flux") in

28

United States District Court
Northern District of California

2014.  *Id.*[3]  Plaintiffs allege that Flux is simply a reconstitution and continuation of Project Genie under a different name, and is run by former Project Genie team members Kaufmann, Carlile, Roman, and Chim.  *Id.* ¶ 69.  Plaintiffs allege that the Flux Defendants are fully aware that Flux's products and services—including an automated software system called the Flux Metro Austin Preview—use Mr. Attia's trade secrets and proprietary information and do not originate from Defendants' original ideas.  *Id.* ¶¶ 70-71.

In a September 2013 letter sent to Larry Page, Mr. Attia wrote: "the Genie project that was being pursued under Google X was an implementation of my life's work – EA technology."  *Id.* ¶ 73.  Mr. Attia further contended that after he was removed from Project Genie, the project that became Project Vennevar (and ultimately Flux) is "based on my inventions."  *Id.*  Mr. Attia described to Page how Sebastian Thrun called Mr. Attia on December 30, 2011, and said: "Genie is spinning out, it's spinning out without you unfortunately, and that is that.  It's a miserable situation because it's true that you got to Google with your life's vision to implement what's happening, and the fact that you are not part of it is the worst part of all. But there is nothing I can do about it.  So you have to take it."  *Id.*  Page never responded to Mr. Attia's letter.  *Id.*  Similarly, no one at Google responded to Mr. Attia's October 2013 letters alerting Google's Board of Directors and Senior Advisors to his allegations of trade secret theft of EA technology by those involved with Project Genie.  *Id.* ¶ 74.  This lawsuit followed.

**B.    Procedural History**

Plaintiffs filed this action in Santa Clara County Superior Court on December 5, 2014, alleging exclusively state law causes of action for misappropriation of trade secrets, breach of contract, and other claims related to Defendants' alleged stealing of Mr. Attia's proprietary Engineered Architecture invention.  *See* Exh. A to Notice of Removal, ECF 1-1.  The state court granted Plaintiffs' unopposed motion to file a First Amended Complaint ("FAC"), at which point the Google Defendants demurred to each cause of action in the FAC and moved to strike Plaintiffs' request for punitive damages.  *See* Exh. D to Notice of Removal, ECF 1-1 at 105.  The

---

[3] Flux Factory, Inc. subsequently changed its name to Flux Data, Inc. *See* Exh. B to Declaration of Robert J. Kent ("Kent Decl."), ECF 31-1, 31-3.

United States District Court
Northern District of California

United States District Court
Northern District of California

Flux Defendants joined in the demurrer and motion to strike.  *Id*.  On February 1, 2016, the state court sustained the demurrer with leave to amend as to the trade secret misappropriation claim and breach of covenant of good faith and fair dealing claim, and without leave to amend as to Plaintiffs' claim for breach of the NDA.  *Id*. at 106-107.  The state court overruled the demurrer as to claims for breach of the ISA and declaratory relief, and granted the unopposed motion to strike without leave to amend because none of the alleged causes of action authorize punitive damages.  *Id*. at 108.

Plaintiffs filed a Second Amended Complaint ("SAC") on February 9, 2016, pursuing only claims for trade secret misappropriation, breach of the ISA/SOW, and declaratory relief.  *See* Exh. E to Notice of Removal, ECF 1-2.  The Google Defendants demurred on statute of limitations grounds as to certain claims and moved to strike allegations in the SAC, to which the Flux Defendants joined.  *See* Exh. F to Notice of Removal, ECF 1-2 at 41.  On August 22, 2016, the state court overruled the demurrer in its entirety, and granted in part and denied in part Defendants' motion to strike, including striking Plaintiffs' prayer for punitive damages for the second time.  *Id*. at 44.[4]  Plaintiffs filed the Third Amended Complaint ("3AC") on August 26, 2016, again asserting three causes of action for (1) misappropriation of trade secrets by Mr. Attia against all Defendants; (2) breach of the ISA/SOW by Plaintiffs against Google only; and (3) declaratory relief by Plaintiffs against all Defendants.  *See* Exh. G to Notice of Removal, ECF 1-2.  The Google Defendants and Flux Defendants answered the Third Amended Complaint.  *See* Exh. H to Notice of Removal, ECF 1-2; Exh. I to Notice of Removal, ECF 1-3.  On September 26, 2016, Google filed a cross-complaint for breach of contract and indemnity against Attia PC.  *See* Exh. J to Notice of Removal, ECF 1-3.  Attia PC answered the cross-complaint.  *See* Exh. K to Notice of Removal, ECF 1-3.

On July 25, 2017, after years of extensive litigation in state court as described above, including several versions of the pleadings and trial scheduled for September 2018, Plaintiffs moved for leave to file a Fourth Amended Complaint in order to add five federal RICO causes of

---

[4] The Google Defendants also moved for sanctions against Plaintiffs, which the state court denied. *See* Exh. F to Notice of Removal, ECF 1-2 at 45.

United States District Court
Northern District of California

1   action pursuant to 18 U.S.C. § 1964(c).  *See* Notice of Removal ¶ 8, ECF 1.  Specifically,

2   Plaintiffs sought to allege instances where inventors other than Mr. Attia accused Defendants of

3   trade secret misappropriation, in order to support substantive racketeering claims against Google,

4   Page, and Brin pursuant to 18 U.S.C. § 1962(b) and (c), as well as RICO conspiracy claims

5   against all Defendants pursuant to 18 U.S.C. § 1962(d).  *See* Exh. L to Notice of Removal, ECF 1-

6   1 at 31.  Citing California's liberal policy in favor of permitting amendment, the state court

7   granted Plaintiffs' motion for leave to file the Fourth Amended Complaint on October 4, 2017.  *Id.*

8   In doing so, the state court explained that Plaintiffs' proposal to bifurcate trial and stay discovery

9   on the RICO claims until after resolution of the original state law claims would minimize the

10  prejudice to Defendants.  *Id.* at 33.

11      Although the state court permitted amendment on the condition that the RICO claims be

12  bifurcated for trial, federal question jurisdiction arose upon the filing of the Fourth Amended

13  Complaint and Defendants promptly removed this action to federal court on October 23, 2017.

14  *See* Notice of Removal, ECF 1.

15      **C.      RICO Allegations**

16      The Fourth Amended Complaint contains two substantive counts of RICO against

17  Defendants Google, Page, and Brin, and three conspiracy counts of RICO against all Defendants.

18  *See* 4AC ¶¶ 111-197.  In the Fourth Cause of Action for violations of 18 U.S.C. § 1962(c),

19  Plaintiffs allege that Google, Page, and Brin conducted or participated in racketeering by

20  repeatedly and purposefully stealing intellectual property from other inventors and companies.

21  4AC ¶¶ 111-162.  According to Plaintiffs, EA technology is only one in a much longer list of

22  inventions that Google, Page, and Brin misappropriated for their own benefit.  *Id.* ¶ 114

23  ("Defendants' pattern of theft is so persistent that almost every modern and popular arm of

24  Google, Inc. is derivative and comes from the stolen work of others.")

25      In an attempt to allege the existence of a continuous pattern of criminal activity, Plaintiffs

26  cite to and summarize the following "non-exclusive" list of six lawsuits brought by other plaintiffs

27  against Google and its "various accomplices" for trade secret misappropriation.  *Id.* ¶¶ 116-152.

28

(1)   ***VSL Communications, LTD v. Google, Inc., et al***., 1-14-CV-269231 (Santa Clara Superior Ct., Cal., 2014): trade secret misappropriation case involving file transfer technology.  *See* 4AC ¶¶ 117-122.

(2)   ***Space Data Corp. v. X, Alphabet, Inc., et al.***, 5:16-cv-03260-BLF (N.D. Cal. 2016): trade secret misappropriation case involving wireless technology in high-altitude balloons. *See* 4AC ¶¶ 123-130.

(3)   ***Be In, Inc. v. Google, Inc., et al.***, 5:12-cv-03373-LHK (N.D. Cal. 2012): trade secret misappropriation case involving videoconferencing software. *See* 4AC ¶¶ 131-136.

(4)   ***Digital Envoy, Inc. v. Google, Inc.***, C-04-01497-RS (N.D. Cal. 2005): trade secret misappropriation case involving intelligence technology referred to as Database Libraries.  *See* 4AC ¶¶ 137-141.

(5)   ***PayPal, Inc., et al. v. Google, Inc., et al.***, 1-11-CV-201863 (Santa Clara Superior Ct., Cal., 2014): trade secret misappropriation case involving auction and payment technology.  *See* 4AC ¶¶ 142-146.

(6)   ***VoiceOne Comm., LLC v. Google, Inc., et al.***, 12-cv-9433 (S.D.N.Y. 2012): trade secret misappropriation case involving transmission technologies for the delivery of voice communications over the Internet. *See* 4AC ¶¶ 147-152.

As discussed further below, five of these lawsuits, filed over the past decade or so, have resolved in favor of Google.  Although the facts and parties involved in these cases differ from each other and from Mr. Attia's own experience, Plaintiffs allege that these cases demonstrate the way Defendants regularly conduct their business—through an unlawful pattern of racketeering activity that ultimately harmed Plaintiffs.  *See, e.g.*, 4AC ¶¶ 116, 153.  This alleged pattern of criminal activity consists of Defendants (1) seeking out inventors; (2) promising the inventors that Google will invest in, partner with and/or seek to acquire a license for any proprietary inventions of the investor; (3) signing an NDA with inventors; (4) upon inducing inventors to reveal trade secrets and other confidential information, Google disregards the NDA and misappropriates the trade secrets; and (5) Google then subsequently attempts to box-out the victim inventors from the market by filing numerous patent applications which result in the unauthorized disclosure of the inventors' trade secrets and the subsequent granting of a monopoly on the technology by issuance of the patent.[5]  *Id*. ¶ 113.

---

[5] Where no NDA is required, Plaintiffs allege that "Google has simply copied and criminally stole

United States District Court
Northern District of California

In their Seventh Cause of Action, Plaintiffs allege that Google, Page, and Brin violated 18 U.S.C. § 1962(b) by using racketeering to gain an interest in an enterprise: Attia PC. *See* 4AC ¶¶ 180-186. The three remaining RICO conspiracy claims are alleged against all Defendants for violating:

- 18 U.S.C. § 1962(d) (Conspiracy to violate 18 U.S.C. § 1962(a)—use or investment of income gained through racketeering) **(Fifth Cause of Action)**;

- 18 U.S.C. § 1962(d) (Conspiracy to violate 18 U.S.C. § 1962(c)— conducting or participating in racketeering) **(Sixth Cause of Action);**

- 18 U.S.C. § 1962(d) (Conspiracy to violate 18 U.S.C. § 1962(b)—Use of racketeering to gain an interest in an enterprise) **(Eighth Cause of Action).**

*See* 4AC ¶¶ 163-179, 187-197.

The Google Defendants and Flux Defendants have moved to dismiss the RICO claims. Plaintiffs move for partial remand, conceding that the Court has jurisdiction over the case based on the federal RICO claims, but urging the Court to decline to exercise supplemental jurisdiction over the state law claims. *See* Google Mot.; Flux Mot.; Remand Mot., ECF 38. The Court considers Defendants' motions to dismiss before turning to Plaintiffs' motion for partial remand.

## II.    DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' RICO CLAIMS

### A.    Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

other inventors' copyrights." 4AC ¶ 113.

2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### B.    Requests for Judicial Notice

In connection with its Motion to Dismiss, Google requests the Court to consider Exhibits 1-3, 5, 7, 10, and 14 to the Declaration of Charles T. Graves to be incorporated by reference into the Fourth Amended Complaint, and to take judicial notice of Exhibits 4, 6, 8-9, 11-13, 15, and 17-18.  *See* Google Defs' Request for Judicial Notice, ECF 30-5; Declaration of Charles Graves ("Graves Decl."), ECF 30-1.  The Flux Defendants also request that the Court take judicial notice of Exhibits A-C of the Kent Declaration.  *See* Flux Mot. at 8 n.1; 10-11 n.2, 14 n.3.  Plaintiffs did not formally object to Defendants' requests.

The Court finds that these exhibits are either incorporated by reference in the Fourth Amended Complaint, and/or are public records that are proper subjects of judicial notice.  Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")  These exhibits are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned because they are publicly available documents such as (1) filings with the United States Patent and Trademark Office ("PTO") (Exhs. 1-2 to Graves Decl.); (2) filings with the Delaware Division of Corporations (Exh. B to Kent Decl.); (3) filings with the California Architects Board (Exh. A to Kent Decl.); (4) complaints filed in lawsuits relied on in the Fourth Amended Complaint (Exhs. 3, 5, 7, 10, 14 to Graves Decl.; Exh. A to Kent Decl.); and (5) orders, voluntary dismissals, and declarations filed in court proceedings (Exhs. 4, 6, 8-9, 11-13, 15, 17-18 to Graves Decl.).  Accordingly, the Court GRANTS Defendants'

United States District Court
Northern District of California

11

requests for the Court to consider and/or take judicial notice of the Exhibits attached to the Graves and Kent Declarations.

### C.       Discussion

The Court addresses the Google Defendants and Flux Defendants' motions to dismiss the RICO claims together, noting where the arguments differ in their application to each group of defendants. [6]  First, all Defendants argue that Plaintiffs lack standing to assert their RICO claims because they cannot plead that they were victims of a timely predicate act.  *See* Google Mot. at 8-12.  In addition to lack of standing, the Google Defendants argue that Plaintiffs fail to plead key elements of their substantive RICO claims including (1) the requisite type of RICO injury, namely "concrete financial loss"; and (2) a pattern of racketeering activity, which requires at least two "predicate acts." *Id.* at 12-17.  With respect to Causes of Action 7 and 8, the Google Defendants argue that Plaintiffs fail to allege that Defendants had an interest in Attia PC sufficient to support an acquisition of interest claim.  *Id.* at 19-21.  All Defendants argue that Plaintiffs' RICO conspiracy allegations are insufficient, warranting dismissal of causes of action five, six, and eight.

For the reasons discussed below and on the record at the March 8, 2018 hearing, the Court finds nearly all of Defendants' arguments in support of dismissing the RICO claims persuasive. As pled, the RICO claims are entirely inadequate and require significant amendment in order to proceed.  However, Defendants' arguments also raised the possibility that leave to amend may be futile due either to lack of RICO standing or Plaintiffs' inability to plead that Defendants acquired an interest in Attia PC in their seventh and eighth causes of action.  The Court therefore took the matter under submission and now determines that despite the significant hurdles that Plaintiffs' RICO claims face, leave to amend is warranted.

---

[6] One of the primary differences in the parties' positions is that all five RICO claims are alleged against the Google Defendants and only the three RICO conspiracy claims are alleged against the Flux Defendants.

### 1.       Standing

Before addressing the sufficiency of Plaintiffs' RICO allegations, the Court considers the dispositive legal argument that all five RICO claims fail at the outset for lack of standing.  *See* Google Mot. at 8.  The parties agree that in order to have standing under RICO, Plaintiffs must plead that they suffered injury proximately caused by Defendants' commission of an enumerated "predicate act" under the RICO statute.  *Id*. at 8 (citing 18 U.S.C. § 1964(c); Opp'n to Google Mot. at 5, ECF 41.  RICO defines racketeering as encompassing a number of federal and state crimes, including violations of 18 U.S.C. § 1832 which criminalizes misappropriation of trade secrets.  *See* 18 U.S.C. § 1961(1)(B).  Plaintiffs assert that their RICO claims are thus based on Defendants' criminal misappropriation of trade secrets, which became a predicate offense under RICO on May 11, 2016 upon enactment of the Defend Trade Secrets Act ("DTSA").

Defendants argue that the timing of the passage of the DTSA compared to the events that occurred in this case is fatal to Plaintiffs' RICO claims.  Even though criminal trade secret misappropriation became a predicate act under RICO as of May 11, 2016, the parties agree that the statutory amendment is not retroactive.  *See Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620, 623-624 (6th Cir. 2001).  Thus, Plaintiffs are required to allege that they suffered injury proximately caused by trade secret theft by each Defendant after May 11, 2016.  Google Mot. at 2, 8.  According to Defendants, Plaintiffs cannot meet these standing requirements because the alleged act, or harm suffered, occurred in 2011 and 2012—a time when criminal trade secret misappropriation was not an enumerated predicate act under RICO.  *See Snowden*, 237 F.3d at 624.

Plaintiffs allege on the face of the Fourth Amended Complaint that Google terminated its relationship with Mr. Attia in December 2011, and allegedly disclosed his trade secrets in patent applications that were published by the PTO in July and November 2012.  *See* 4AC ¶¶ 53–66.  Because Plaintiffs allege that the trade secrets were "extinguished" upon their publication, Defendants argue that no trade secret existed as of May 11, 2016.  Without a trade secret in existence, Defendants contend that there can be no conceivable trade secret misappropriation as of the DTSA's effective date.  This means that although Defendants face liability for trade secret

1   misappropriation under state law, they argue that Plaintiffs do not have standing under RICO.

2        Plaintiffs do not challenge the retroactivity of the statute, conceding that "[t]he DTSA only

3   covers acts occurring on or after the date of the enactment." Opp'n to Google Mot. at 5-6 (citing

4   *Snowden*, 237 F.3d at 624).  Yet Plaintiffs argue that RICO standing exists so long as the *ultimate*

5   predicate act in a pattern of predicate acts that a plaintiff seeks damages on was committed after

6   the DTSA was enacted.  Opp'n to Google Mot. at 6.  Plaintiffs present two arguments in support

7   of RICO standing: (1) that the Google Defendants should be estopped from using their unlawful

8   publication of Plaintiffs' trade secrets in patent applications in 2012 to avoid liability for

9   continued illegal use of the trade secrets after May 11, 2016; and (2) because the DTSA defines

10   misappropriation as including the continued unlawful use of another's trade secret, liability can

11   attach under the DTSA due to Defendants' continued use of Plaintiffs' trade secrets on or after

12   May 11, 2016.  *Id*. at 6-7.  Both arguments fail for the reasons below.

13                    **i.**       **Estoppel**

14        Defendants' primary argument in support of dismissal of the RICO claims for lack of

15   standing is that Plaintiffs cannot allege injury from trade secret misappropriation occurring after

16   May 11, 2016 because Plaintiffs allege that the trade secrets were "extinguished" in 2012 when

17   Google allowed patent applications disclosing the trade secrets to be published by the PTO.  *See*

18   Google Mot. at 11 (citing 4AC ¶¶ 63-65).  In the Fourth Amended Complaint, Plaintiffs allege that

19   Mr. Attia was aware in 2011 that Google was filing patent applications using his trade secrets but

20   he did not believe the conduct was wrongful at the time because he had authorized Google to use

21   his trade secrets to develop Project Genie in exchange for compensation for the use under the

22   terms of the SOW. *See* 4AC ¶ 64.  Rather than abandoning or withdrawing the patent applications,

23   Plaintiffs allege that Google then allowed the applications to be published by the PTO and refused

24   to compensate Mr. Attia for use and disclosure of the trade secrets—"thereby irrevocably using

25   that information and extinguishing his trade secrets." *Id.*

26        The Google Defendants argue that although these allegations support Mr. Attia's state law

27   trade secret misappropriation claims, Plaintiffs have pled themselves out of court on their RICO

28   claims.  If the trade secrets were extinguished in the 2012 patents, Google argues, any proximately

United States District Court
Northern District of California

1    caused injury from misappropriation must have occurred upon that disclosure and not four years

2    later in May 2016.  *See* Google Mot. at 11-12.

3          In response, Plaintiffs argue that Google should be estopped from using its wrongful

4    conduct—i.e. permitting the PTO to publish and "extinguish" the alleged trade secrets—as a

5    defense to its continued illegal use of the proprietary information regarding EA. *See* Opp'n at 6-7

6    ("[I]t would be inequitable for Google to point to that allegation in order to demonstrate that

7    Plaintiffs do not have standing for their RICO claims.")  The Court agrees with the general rule

8    that defendants should not be able to benefit from allegedly wrongful disclosures of trade secrets

9    by avoiding liability stemming from that disclosure under the trade secret law.  However,

10   Plaintiffs' estoppel argument misses the nuanced issue here, which is not about whether

11   Defendants can avoid liability for their wrongful disclosure but is focused on whether Plaintiffs

12   can plausibly allege that trade secret misappropriation occurred on or after May 11, 2016—which

13   they concede they must do in order to allege a predicate act and have standing under RICO.

14         The only authority relied on by Plaintiffs in support of their estoppel argument is a trade

15   secret misappropriation case that has no bearing on RICO standing. *Id.* at 6 (citing *Religious Tech.*

16   *Ctr. v. Netcom On-Line Commc'n Services, Inc.,* 923 F. Supp. 1231, 1256 (N.D. Cal. 1995)).  In

17   that case, the court cited the rule that when a defendant wrongfully publishes a plaintiff's trade

18   secret, the defendant cannot escape liability for the wrongful disclosure by arguing that there is no

19   longer a trade secret to misappropriate. *Id.*  Yet the court in *Religious Tech. Ctr.* ultimately denied

20   injunctive relief to the plaintiff because it found that the defendant had merely republished

21   information that others had already leaked into the public domain. *Id.*  In any event, Plaintiffs'

22   argument misses the mark because Defendants do not seek to avoid substantive liability for trade

23   secret misappropriation at this juncture.  Rather, Defendants argue only that Plaintiffs do not have

24   standing to allege RICO claims based on a recent statutory amendment, because Plaintiffs have

25   not and cannot allege a timely predicate act in light of the 2012 disclosure allegation.  *See* Google

26   Reply at 3, ECF 55.

27         Accordingly, this Court is dealing with the very narrow question of whether Plaintiffs can

28   possibly allege continued trade secret misappropriation on or after May 11, 2016 to allege a

United States District Court
Northern District of California

predicate act required for RICO standing when they have also alleged that the trade secrets at issue were extinguished in 2012.  The Court finds that Defendants are not estopped from making this argument.[7]  To hold otherwise would permit RICO to go back in time and apply retroactively, as a plaintiff could raise estoppel to render any wrongful act a predicate act, even if the RICO statute did not make it a predicate act until years later.  Through extensive briefing and oral argument, Plaintiffs have not convinced the Court that RICO confers standing under these circumstances.

At the hearing on Defendants' motions to dismiss, the Court expressed concern that the law should not encourage trade secret thieves to deliberately publish trade secrets in order to cut off their RICO liability.  In response, the Google Defendants persuasively argued that damages under state law for trade secret misappropriation ensure that defendants will be deterred from such conduct.  Here, Defendants argue only that for purposes of RICO standing—not for liability on the underlying trade secret claim itself—the statute cannot apply retroactively to impose liability for trade secret misappropriation and wrongful disclosure that occurred in 2012.  As discussed at the hearing, the situation presented here is an extremely limited temporal circumstance that will not exist anymore as parties and courts move further from the DTSA's effective date.  This means that a defendant's alleged wrongful disclosure of trade secrets in a patent published in June 2016, for example, would confer RICO standing because the plaintiff could allege injury from a predicate act under the DTSA occurring on or after the statute's effective date.

Contrary to Plaintiffs' contentions, this ruling does not mean that Plaintiffs will be undercompensated for all of Defendants' allegedly unlawful conduct under the DTSA.  Plaintiffs can continue to pursue their trade secret misappropriation claims in state court, where Defendants face liability for their allegedly wrongful disclosure and use of Plaintiffs' trade secrets.  For example, state law provides for remedies related to the unlawful disclosure of trade secrets in patents, such as equitable reassignment of the patent or placement of the patent in an equitable trust.  Plaintiffs cannot, however, pursue RICO claims based on trade secret misappropriation that

_____

[7] In particular, Plaintiffs' estoppel argument would only be applicable against Google, the only defendant to have allegedly disclosed the trade secrets in patent applications.  The argument would have no impact on standing with respect to the other defendants who are not alleged to have any connection to the publication of the trade secrets in the 2012 patents.

1     admittedly occurred before the DTSA came into effect.

2                              ii.        **Continuing Use**

3           Having rejected Plaintiffs' estoppel argument, the Court turns to Plaintiffs' contention that

4     they have pled "continuing" use of their trade secrets by Defendants sufficient to confer RICO

5     standing based on criminal trade secret theft that occurred on or after May 11, 2016.  For the

6     reasons that follow, the Court finds that the alleged disclosure and extinguishment of Plaintiffs'

7     trade secrets in 2012 occurred only once, and cannot amount to "continued misappropriation"

8     extending into 2016.  In any event, there are insufficient allegations of continued use of trade

9     secrets beyond May 11, 2016 by each Defendant.

10          As discussed above, the DTSA applies to "any misappropriation of a trade secret…for

11    which any act occurs on or after" May 11, 2016, the date the law was enacted.  *See* Defense of

12    Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376.  Under the DTSA, the court

13    looks to whether the plaintiff has alleged "facts showing that acts of misappropriation

14    occurred *after* DTSA came into effect," in order to state a claim.  *See Space Data Corp. v. X*, No.

15    16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (quoting *Avago Techs.*

16    *U.S. Inc. v. Nanoprecision Prods, Inc.*, No. 16-cv-3737, 2017 WL 412524, at *9 (N.D. Cal. Jan

17    31, 2017)) (emphasis in original).  In *Avago*, the court held that there is no "authority suggesting

18    that the DTSA allows a misappropriation claim to be asserted based on the continued use of

19    information that was disclosed prior to the effective date of the statute." No. 16-03737-JCS, 2017

20    WL 412524, at *9; *see also Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-

21    02177-SI, 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017) (finding that "without facts about

22    when post-enactment use occurred and whether the information disclosed was new or somehow

23    different from the prior misappropriation, plaintiff has failed to state a claim under the DTSA").

24          Without providing any analysis, Plaintiffs simply state that *Avago* is not binding and

25    should not be followed by this Court. *See* Opp'n to Google Mot. at 7.[8]  But the reasoning in *Avago*

26

27    _____

      [8] Plaintiffs also fail to address the reasoning in *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg.*
28    *Corp.*, where the Federal Circuit reasoned that "[o]nce the information is in the public domain and
      the element of secrecy is gone, the trade secret is extinguished and the patentee's only protection
      is that afforded under the patent law." 587 F.3d 1339, 1355 (Fed. Cir. 2009).

is sound and directly on point.  In *Avago*, the plaintiff alleged that the defendant eliminated its trade secrets by wrongfully publishing a patent application before May 2016.  No. 16-CV-03737-JCS, 2017 WL 412524, at *1-3 (N.D. Cal. Jan. 31, 2017).  The plaintiff then tried to allege that the prior act of trade secret disclosure via patent applications "continued" after enactment of the DTSA.  *Id.* at *9.  The court held that there is no DTSA claim of "continuing misappropriation" when a plaintiff alleges that a defendant eliminated its trade secrets by wrongfully publishing them in a patent application before May 2016.  *Id.*  The Court dismissed the trade secret misappropriation claim providing leave to amend, if possible, to allege facts showing "that the DTSA claim is based on misappropriation that occurred after the effective date of that statute." *Id*.

The Court has reviewed the Fourth Amended Complaint and finds that it does not contain allegations of trade secret misappropriation that occurred on or after May 11, 2016.  Plaintiffs' sparse references to any post-May 2016 conduct by Defendants are based entirely on alleged misappropriation of trade secrets that were "extinguished" in 2012.  Plaintiffs ignore the reasoning in *Ultimax* and *Avago*, arguing that Plaintiffs have specifically alleged that Defendants continued to use Mr. Attia's trade secrets after May 11, 2016, and thus they have adequately pled acts of racketeering that extend beyond the DTSA's effective date.  *See* Opp'n to Google Mot. at 7.

Plaintiffs cite to two paragraphs in the Fourth Amended Complaint in support of this contention.  *See* 4AC ¶¶ 72, 86.  In these paragraphs, Plaintiffs allege that potential investors and partners shunned Mr. Attia as a result of Defendants' misappropriation of the trade secrets and misrepresentations that Defendants owned EA technology.  *Id.* ¶ 72.  Plaintiffs further allege that Flux spun out of Google X and built the "Flux Metro Austin Preview" product based on Mr. Attia's trade secrets.  *Id.* ¶ 86.  Plaintiffs allege that Flux has offered Metro Austin Preview since 2014 for the building design and construction industry and that Flux "currently sells the Flux Metro Austin Preview service on its website, embodying features of the Engineered Architecture technology." *Id.* ¶¶ 5, 70.[9]

---

[9] Plaintiffs attempt to add further pleading through their opposition brief, asserting that Flux has continued to build off of Plaintiffs' stolen trade secrets through "spin-offs" and software for sale on its website that are based on Plaintiffs' technology.  *See* Opp'n to Google Mot. at 7 n.3.  The Court need not consider these additional arguments in the opposition brief, but considers them to

United States District Court
Northern District of California

As for the Google Defendants' continued use of the trade secrets, Plaintiffs focus on Google's relationship to Flux.  Plaintiffs point to allegations regarding the inception of Google X and Project Genie, which spun-off to become Vannevar Technology after Mr. Attia was forced out, and ultimately became Flux.  *See* 4AC ¶¶ 5, 25, 29-30, 57, 67-72, 73-75.  At bottom, Plaintiffs' argument is that Google's investment in Flux, and Flux's makeup of former Google employees who worked on Project Genie, is sufficient to demonstrate that the Google Defendants are liable for Flux's continued use of Plaintiffs' trade secrets through their product offerings.  *See* Opp'n to Google Mot. at 9 ("Google has actively assisted Flux Factory in using the trade secrets…by investing in Flux [], finding other investors for Flux [], licensing the trade secrets back to Flux [] and putting Google employees on the board of Flux [].")

The Court finds that the allegations in the Fourth Amended Complaint are inadequate to allege continued use of Plaintiffs' trade secrets after May 11, 2016 by each Defendant.  At the outset, Plaintiffs do not differentiate between alleged trade secrets that were disclosed by Google in patent applications and "extinguished" upon publication in 2012, and any remaining trade secrets that were not disclosed prior to the DTSA's effective date.[10]  The Court is inclined to follow *Avago* and hold that Plaintiffs have failed to allege continuing misappropriation of trade secrets that were extinguished via publication in 2012.

This case also factually differs from cases where courts have permitted DTSA claims to proceed on a "continuing misappropriation" theory.  In *Space Data*, this Court concluded that the plaintiff could assert a DTSA claim so long as it sufficiently alleged that the defendant "continued to use" the alleged trade secrets after May 11, 2016.  *See* Case No. 5:16-cv-03260-BLF (Dec. 18, 2017), ECF No. 176 at 5-6.  *Space Data* did not deal with trade secrets that were allegedly published or extinguished prior to May 11, 2016, and the Court further based its holding on allegations that Google continued to misuse purported trade secrets after May 11, 2016 as part of

---

be a proffer of what Plaintiffs' might plead if afforded leave to amend.

[10] For example, the Court cannot draw a plausible inference that Flux's Metro Austin Preview product misappropriates trade secrets other than previously proprietary information that was made public in 2012.  *See* 4AC ¶ 70.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  an ongoing project.  *Id.*  Here, Plaintiffs not only allege that their trade secrets were extinguished

2  in 2012, but the Fourth Amended Complaint does not plausibly allege facts regarding any

3  wrongful acts of trade secret misappropriation occurring on or after May 11, 2016.

4       The only allegations that come close to pleading continuing use of anything are Plaintiffs'

5  allegations regarding Flux's Metro Austin Preview product.  *See* 4AC ¶¶ 5, 70, 86.  These

6  allegations do not confer standing under RICO for two reasons.  First, the allegations only pertain

7  to Flux.  Plaintiffs' attempt to tie Google to Flux through unspecified investment and support do

8  not amount to factual allegations that any Google Defendant designed or developed Metro Austin

9  Preview or committed any act of misappropriation on or after May 11, 2016.  Accordingly,

10  Plaintiffs' allegations of continued misappropriation are plainly inadequate as to the Google

11  Defendants notwithstanding allegations that no trade secrets existed after 2012.  The Court also

12  finds that Plaintiffs impermissibly bundle the individual defendants with the corporate defendants,

13  making it impossible for the Court to glean whether any individual defendant committed a

14  predicate act of trade secret theft on or after May 11, 2016 that proximately caused injury to

15  Plaintiffs on or after that date.[11]

16       Second, as explained above, there is no plausible allegation in the Fourth Amended

17  Complaint that Metro Austin Preview or any other Flux product misappropriated information that

18  was a *secret* as of May 11, 2016.  Plaintiffs allege that their trade secrets were extinguished upon

19  publication of patent applications in 2012, which prevents the DTSA from attaching to any trade

20  secret in existence on or after May 11, 2016.  Accordingly, Plaintiffs have not adequately alleged

21  that any Defendant committed a predicate act of criminal trade secret theft on or after May 11,

22  2016, which is required to confer standing to pursue their RICO claims.

23

24       

---

[11] The Google Defendants also argue that Attia PC does not have a valid trade secret claim upon

25  which to consider a potential RICO claim because it was a suspended entity when it filed suit
against Defendants and is barred under the statute of limitations from pursuing trade secret

26  misappropriation claims. *See* Exh. B to Notice of Removal, ECF 1-1 at 9.  Defendants did not
fully brief this argument, and Plaintiffs did not address this argument in their opposition or at the

27  hearing.  Upon amendment, Plaintiffs are strongly advised to examine any RICO claims based on
trade secret misappropriation brought by Attia PC before reasserting them, as the Court is inclined

28  to find that Attia PC's RICO claims are barred on this basis.

1      For the foregoing reasons, Defendants' motions to dismiss the RICO claims for lack of

2  standing are GRANTED WITH LEAVE TO AMEND.  If possible under Rule 11, Plaintiffs may

3  amend their complaint to allege that *each defendant* committed a predicate act under RICO that

4  caused injury to Plaintiffs on or after May 11, 2016.  Although Defendants urge the Court to

5  dismiss the RICO claims without leave to amend in light of the timeline underlying Plaintiffs'

6  entire case, the Court finds that Plaintiffs shall be afforded leave to amend their RICO allegations

7  in line with guidance provided by the Court in this Order and at the hearing.  In particular, the

8  Court is concerned about allegations suggesting that Flux continues to market and sell products

9  that contain Plaintiffs' alleged trade secrets.  However, in order to avail themselves of the case law

10  permitting DTSA claims to proceed on a "continuing use" theory, Plaintiffs must plead facts to

11  show misappropriation of *trade secrets* that occurred on or after the DTSA's effective date.  That

12  means that any alleged trade secret misappropriation or injury occurring after May 2016 cannot be

13  based on continued use of information that was disclosed in patent applications published in 2012.

14  *See Avago*, No. 16-CV-03737-JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017) (finding no

15  "authority suggesting that the DTSA allows a misappropriation claim to be asserted based on the

16  continued use of information that was disclosed prior to the effective date of the statute.")

17      Although the standing argument is dispositive, it is far from the only deficiency regarding

18  Plaintiffs' RICO claims.  Below, the Court addresses Defendants' additional arguments for

19  dismissal of the RICO claims.

20        **2.    Concrete Financial Loss**

21      The Google Defendants also move to dismiss Plaintiffs' RICO claims for failure to satisfy

22  RICO's injury requirement of "concrete financial loss."  *See* Google Mot. at 13.  Plaintiffs argue

23  that they are not required to plead a tangible injury beyond the loss of exclusive control of their

24  trade secrets, and that even if the "concrete financial injury" requirement applies, they have

25  satisfied it.  *See* Opp'n to Google Mot. at 10-11.

26      The Court is not persuaded by Plaintiffs' reading of controlling Ninth Circuit authority.  In

27  *Oscar v. University Students Co-operative Ass'n*, the Ninth Circuit held that RICO does not

28  provide a cause of action for all types of injury to property interests, but only for injuries that

United States District Court
Northern District of California

21

1   result in "concrete financial loss."  965 F.2d 783, 785 (9th Cir. 1992) (en banc).  When the Ninth

2   Circuit revisited the issue in *Diaz v. Gates*, 420 F.3d 897, 899 (9th Cir. 2005), it explained that

3   intervening case law has clarified the standard for pleading a RICO injury set forth in *Oscar*.  The

4   Ninth Circuit in *Diaz* held that an injury is compensable under RICO if the injury constitutes

5   "harm to a specific business or property interest" and if the alleged business or property interest is

6   cognizable under state law.  420 F.3d at 900; *see also Newcal Indus., Inc. v. Ikon Office Sol.*, 513

7   F.3d 1038, 1055 (9th Cir. 2008).

8        Plaintiffs ignore the first half of this requirement under *Diaz* and argue that they need only

9   plead an injury to their business or property that is cognizable under state law. *See* Opp'n to

10  Google Mot. at 10.  But *Diaz* did not eliminate the requirement that a RICO plaintiff must allege

11  "some tangible financial loss."  420 F.3d at 900.  Thus, Plaintiffs must allege more than a property

12  right to their trade secrets and misappropriation of those trade secrets under state law—which is

13  only half the analysis.  Contrary to Plaintiffs' suggestion, it is plainly insufficient under RICO to

14  plead an "injury" and nothing more.

15       Applying the proper legal standard, however, the Court finds that Plaintiffs *have* satisfied

16  the requirements for pleading a RICO injury.  Plainly, allegations of trade secret misappropriation

17  are sufficient to allege that Plaintiffs suffered an injury to business or property recognized by state

18  law.  Plaintiffs have also alleged a concrete financial loss.  Defendants rely on *Mattel, Inc. v. MGA*

19  *Entm't, Inc.*, to argue that Plaintiffs fail to plead a concrete financial loss, but that case is

20  distinguishable.  782 F. Supp. 2d 911, 1019 (C.D. Cal. 2011).  The *Mattel* court focused on the

21  plaintiff's loss of exclusive control over its confidential trade secrets in holding that the plaintiff

22  failed to show concrete financial loss at summary judgment.  *Id.* at 1021 ("Mattel cannot show that

23  it suffered concrete financial loss, either in the form of lost opportunity or lost profits, as a result

24  of the deprivation of its property interest in the exclusive use of its trade secret materials.")  The

25  court reasoned that unlike the plaintiff in *Diaz* who "could not fulfill his employment contract or

26  pursue valuable employment opportunities," as a result of wrongful imprisonment, Mattel was

27  "not foreclosed from using its materials, like market research and pricing matrices, which

28  continued to reside on Mattel's servers." *Id.* at 1020.

United States District Court
Northern District of California

Here, Plaintiffs allege that they lost more than the *exclusive* use of their trade secrets: they allege that they were entirely foreclosed from using their trade secrets after Google allowed them to be published by the PTO in 2012. *See* 4AC ¶¶ 63-65. Accordingly, Plaintiffs allege that while Defendants were able to raise over $40 million in capital from top investors based on representations that they owned the stolen trade secrets, Plaintiffs were shunned by potential investors when they attempted to further develop and commercialize EA technology. *Id*. ¶¶ 68, 70-72. Plaintiffs also allege that they suffered concrete financial loss based on lost opportunities with Google. For example, in the course of discussing the creation of a new company, Google allegedly offered Mr. Attia a 7% interest in the company to compensate Mr. Attia for his proprietary information and an additional 8% of the new venture as a co-founder. *Id*. ¶¶ 51-52. Mr. Attia was subsequently forced out of Project Genie and alleges that he was never compensated for his proprietary information. *See, e.g.*, *id.* ¶¶ 61, 64-65, 74.

These factual circumstances materially differ from those in *Mattel*, which dealt with an abstract injury from loss of *exclusive* control of a trade secret, and the Court finds that Plaintiffs have sufficiently alleged concrete financial loss at the pleading stage through Plaintiffs' specific lost opportunities to use and profit from EA technology after Google patented the alleged trade secrets in 2012.

### 3. Pattern of Racketeering Activity

As currently alleged, one of the biggest deficiencies with respect to Plaintiffs' RICO claims is the failure to plead the existence of a "pattern of racketeering activity." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) (per curiam). A "pattern of racketeering activity" requires commission of at least two enumerated predicate offenses within a ten-year period. 18 U.S.C. § 1961(1), (5). The Supreme Court has made clear that in addition to the requisite number of predicate acts, the plaintiff must show that the predicates are related and "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The latter concept, "continuity," refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.

As examples of predicate offenses, Plaintiffs point to the above-described list of six lawsuits where other plaintiffs brought trade secret misappropriation claims against Google.  *See* 4AC ¶¶ 116-152.  For the reasons that follow, as well as those stated on the record at the hearing, these allegations do not support a plausible "pattern of racketeering" and require amendment in order to proceed.

### i.     Rule 11

The Court first addresses Defendants' argument that Plaintiffs' pleading tactic of relying on other lawsuits runs afoul of Federal Rule of Civil Procedure 11.  In pertinent part, Rule 11 requires that attorneys have sufficient knowledge of the factual allegations in their pleadings to justify signing the document and thereby attesting, among other things, that their claims and other legal contentions are warranted by existing law or by a nonfrivolous argument, and that their factual contentions have evidentiary support or will likely have evidentiary support after discovery.  Fed. R. Civ. P. 11 (b); *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ("An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose.")  Moreover, the Supreme Court has held that under Rule 11(b), an attorney has a "nondelegable responsibility" to "personally…validate the truth and legal reasonableness of the papers filed." *Pavelic & LeFlore v. Marvel Entm't Group,* 493 U.S. 120, 126 (1989).

Plaintiffs' sole basis for pleading a pattern of predicate acts under RICO in the Fourth Amended Complaint derives from the existence of six lawsuits filed against Google by other plaintiffs represented by different attorneys.  4AC ¶¶ 116-152.  In other words, all Plaintiffs have alleged as a predicate acts is that other inventors have sued Google (but not the other Defendants) for stealing their trade secrets.  But there is no allegation or indication that Plaintiffs' attorneys engaged in independent investigation of the claims and allegations alleged in those lawsuits.

Given the nondelegable duty imposed on attorneys under Rule 11, courts routinely strike allegations that rely exclusively on the analysis and investigation of different attorneys in different actions.  *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005–06 (N.D. Cal. 2008)

1   ("Given that this responsibility [under Rule 11] cannot be delegated to another member of the

2   attorney's firm…it would make little sense that an attorney somehow can rely on the analysis of

3   attorneys in *different actions* and who are presumably from different law firms.") (emphasis in

4   original) (citing *Pavelic*, 493 U.S. at 125-27); *see also Maine State Ret. Sys. v. Countrywide Fin.*

5   *Corp.*, No. 2:10-CV-0302 MRP, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011) ("Attorneys

6   have a non-delegable duty to make a reasonable inquiry into whether the factual contentions made

7   in a complaint have evidentiary support…This duty means Plaintiffs cannot rely on allegations

8   from complaints in other cases if the Plaintiffs themselves have not investigated the allegations.")

9   (citing Rule 11(b)); *see also Geinko v. Padda,* No. 00 C 5070, 2002 WL 276236, at *6 (N.D. Ill.

10  Feb.27, 2002) ("Plaintiffs' attorneys cannot shirk their Rule 11 obligation to conduct an

11  appropriate investigation into the facts that is reasonable under the circumstances by merely

12  stating that 'the SEC alleges' certain additional facts.").

13          The Fourth Amended Complaint merely recites the allegations and proceedings in six other

14  lawsuits without indicating that Plaintiffs' attorneys conducted "a reasonable factual investigation"

15  into those claims before filing this complaint.  *See Christian*, 286 F.3d at 1127.  Accordingly, the

16  Court agrees with Defendants that all of the allegations regarding those lawsuits should be

17  disregarded unless and until Plaintiffs satisfy Rule 11(b)'s requirement that they personally

18  investigate their claims against Defendants.  *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d

19  at 1005.  Under Rule 11, Plaintiffs may not simply regurgitate other parties' pleadings to establish

20  a pattern of predicate acts.  As these six lawsuits form the entire basis for Plaintiffs' alleged RICO

21  pattern, all of Plaintiffs' RICO causes of action are deficient and are hereby dismissed WITH

22  LEAVE TO AMEND.

23          At the hearing on Defendants' motions to dismiss, Plaintiffs' counsel "100 percent" agreed

24  with this Court's reasoning and conceded that the Fourth Amended Complaint, which was drafted

25  for state court prior to removal, is "inadequate in federal court."  *See* March 8, 2018 Hearing

26  Transcript at 45:17-23, ECF 84.  Plaintiffs then requested the opportunity to go back and amend

27  their pattern allegations.  The Court now affords Plaintiffs leave to amend, as it may still be

28  possible for them to plead a RICO pattern based on evidence of Defendants' similar scheme

against others.  Other courts have explained that the required "investigation would include speaking directly to the sources upon which the other complaints rely, or examining the purported [documents] which the other complaints describe, or contacting the attorneys whose allegations they copied to discuss the basis for the claims." *Maine State Ret. Sys.*, No. 2:10-CV-0302 MRP, 2011 WL 4389689, at *20.  Thus, while Plaintiffs are not precluded from relying on other sources as part of their investigation, they must allege *facts* supporting their allegations that Defendants misappropriated the trade secrets of other inventors.[12]  It is not sufficient to merely plead the existence of other trade secret lawsuits.  Plaintiffs must plead the underlying factual circumstances of each case.

### ii.    Other Deficiencies with Pattern Allegations

Defendants argue that even if the Court considers facts from the six other lawsuits, the allegations fail to support a plausible "pattern of racketeering." *See* Google Mot. at 15; Flux Mot. at 20.  Specifically, Defendants argue that Plaintiffs do not plausibly plead facts demonstrating the required relationship and continuity among the predicate acts: the six trade secret misappropriation lawsuits filed by other inventors against Google.  Defendants seek a general ruling from the Court precluding the six lawsuits involving different technologies, different defendants, and different factual circumstances from establishing a pattern under RICO.

The Court defers ruling on this issue until it has the opportunity to examine Plaintiffs' amended allegations in compliance with Rule 11.[13]  As discussed at the hearing, the Court is not persuaded at this point that Plaintiffs' theory of a RICO pattern is too far flung.  Moreover, the case relied on by Defendants to demonstrate that the alleged predicate acts are unrelated involved vastly different circumstances to the trade secret misappropriation lawsuits alleged here.  In *Mexicanos v. Hewlett-Packard Co.*, this Court considered whether RICO has extraterritorial application, and analyzed the pattern allegations with an eye toward whether the plaintiffs had

---

[12] This Court has taken judicial notice of the fact that five of the six lawsuits have resolved favorably for Google.  Plaintiffs' Rule 11 obligation to conduct a factual investigation into their claims is similarly bound by these realities.

[13] For similar reasons, the Court defers ruling on the Flux Defendants' argument that Plaintiffs' RICO claims sound in fraud and must therefore be alleged under Rule 9(b).  *See* Flux Mot. at 6-9.

United States District Court
Northern District of California

adequately alleged a domestic scheme under RICO. No. 14-CV-05292-BLF, 2015 WL 9592606, at *6 (N.D. Cal. July 13, 2015).  Nevertheless, the Court does not reach the question of whether the six lawsuits can demonstrate a pattern of criminal trade secret theft.  Plaintiffs are afforded leave to amend to pursue this theory, and Defendants are not precluded from re-asserting this argument in a subsequent motion to dismiss.

The Court is concerned, however, by the absence of allegations tying each defendant to the alleged predicate acts.  Although Google as a company is clearly the common thread throughout the six lawsuits, there is no allegation that any other defendant engaged in the alleged wrongdoing in these cases.  *See* 4AC ¶¶ 116-152.  Plaintiffs' argument that the six other alleged schemes demonstrating that "Defendants" stole inventors' trade secrets as their regular way of doing business is disingenuous—the schemes are only alleged to involve wrongdoing by Google.  The Court acknowledges that, for example, in the context of *Space Data Corp. v. X, Alphabet, Inc., et al.*, Defendants Page and Brin are alleged to have visited Space Data's facilities and directed engineers to begin planning a balloon-borne internet constellation. 4AC ¶¶ 127, 129.  It is thus conceivable that Plaintiffs could amend their complaint to plausibly allege that Page and Brin were involved in similar schemes to steal the trade secrets of inventors other than Mr. Attia.  However, the Google Defendants point out that the complaints in *Space Data* and *PayPal* only mention Page and Brin in the factual background but do not accuse them of wrongdoing.  *See* Google Reply at 11-12.

With respect to the remaining defendants, there is no indication from the pleading that any other defendant was involved in the facts underlying the trade secret misappropriation cases.  Flux did not even exist as a legal entity at the time of several of the alleged predicate acts.  *See* Flux Mot. at 18.  Plaintiffs must address these deficiencies in amending their complaint in order to plausibly allege a pattern of RICO activity against each defendant.

### 4. Interest in Attia PC

Plaintiffs' seventh cause of action alleges that Google, Page, and Brin violated 18 U.S.C. § 1962(b) by using racketeering to gain an interest in Attia PC.  *See* 4AC ¶¶ 180-186.  The eighth cause of action alleges that all Defendants conspired under § 1962(d) to violate § 1962(b).  4AC

¶¶ 187-197.  The Google Defendants argue that counts seven and eight must be dismissed on the independent grounds that Plaintiffs fail to allege that the Defendants have acquired an interest in Attia PC required to support their acquisition of interest in an enterprise claim under RICO.  *See* Google Mot. at 19-21. [14]  The Court agrees that Plaintiffs' acquisition of interest claim in the Fourth Amended Complaint is entirely implausible and factually unsupported.

Plaintiffs' theory is that the Google Defendants gained an interest in Attia PC by acquiring control over Plaintiffs' trade secrets through acts of racketeering.  *See* Opp'n to Google Mot. at 18. The cases relied on by Plaintiffs in support of this argument are inapposite.  In *United States v. Jacobson*, the court found that section 1962(b) was implicated by evidence that the defendant acquired a bakery's lease (the "property right" at issue in the case) as loan collateral and "used the lease as a means to control the bakery enterprise" and thus "acquired control of the bakery." 691 F.2d 110, 112 (2d Cir. 1982).  Based on evidence that the defendant evicted the owner, changed the locks, took money from the cash register and purchased fixtures and equipment, the court reasoned that a jury might reasonably believe such actions "constituted the exercise of control." *Id.* Similarly, *Vista Co. v. Columbia Pictures Indus., Inc.* involved allegations that the defendant acquired security interests in an enterprise's only income producing assets, controlled the distribution of the enterprise's films, controlled the flow of income to the enterprise, and claimed investment tax credit for the films.  725 F. Supp. 1286, 1300 (S.D.N.Y. 1989).  No such interest in or control over Attia PC is alleged in the Fourth Amended Complaint.  As the Google Defendants point out, the fact that Attia PC is even pursuing claims against Defendants refutes the notion that Defendants have an interest in or control Attia PC as a business entity.  *See* Google Mot. at 21.

The Court agrees that Plaintiffs' argument confuses the enterprise with the assets of the enterprise.  *See* Google Reply at 14 (citing *Crotty v. City of Chicago Heights*, No. 86 C 3412, 1989 WL 152825, at *4 (N.D. Ill. Nov. 15, 1989) ("RICO focuses on the illegitimate infiltration

---

[14] In addition to filing their own 22-page motion to dismiss, the Flux Defendants attempt to incorporate several of the Google Defendants' arguments by reference, including this argument that Plaintiffs have not shown any interest acquired in Attia PC by any defendant.  *See* Flux Mot. at 21-22.  As explained at the hearing, this is an impermissible extension of the page limits and such incorporation by reference will not be entertained by the Court.

United States District Court
Northern District of California

of *businesses* by a pattern of racketeering activity…RICO does not apply to the acquisition of business assets.") (internal citations omitted)).  Plaintiffs fail to counter any of the Google Defendants' arguments on this issue.  *See* Opp'n to Google Mot. at 18.  Accordingly, the Court GRANTS the Google Defendants' motion to dismiss the seventh and eighth causes of action on the independent ground that Plaintiffs have failed to plausibly allege that Defendants gained an interest in Attia PC.

At the hearing, the Court indicated that it was unlikely to grant Plaintiffs leave to amend their seventh and eighth causes of action.  *See* March 8, 2018 Hearing Transcript at 52:23-25.  In response, Plaintiffs' counsel handed the Court three additional cases that were not cited in their briefing on this argument.  As these cases were not briefed, and therefore Defendants were not given a chance to respond to them, the Court has not reviewed the cases and does not consider them here.  However, the Court will grant Plaintiffs leave to amend their seventh and eighth causes of action along with the rest of their RICO claims, with the proviso that Plaintiffs should take a close look at the law on whether taking an intellectual property asset—as opposed to acquiring an interest in the enterprise itself—amounts to a violation of section 1962(b).

### 5.        Conspiracy

The Court also finds that Plaintiffs' RICO conspiracy claims alleged in the fifth, sixth, and eighth causes of action are factually deficient and warrant dismissal.  Notably, these are the only RICO causes of action alleged against the Flux Defendants, who argue that Plaintiffs have not alleged either (1) an agreement to commit a substantive violation of RICO, or (2) an agreement to commit two or more underlying predicate offenses.  *See* Flux Mot. at 12-20.  The Google Defendants similarly argue that the conspiracy claims alleged against them in the Fourth Amended Complaint are conclusory and implausible.  *See* Google Mot. at 17-19.

RICO's conspiracy provision simply provides that: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).  Defendants concede that RICO has no overt act requirement.  However, an alleged RICO conspirator must "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or

1   facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 63 (1997).  A defendant

2   must also have been "aware of the essential nature and scope of the enterprise and intended to

3   participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.  1993) (internal quotation marks

4   omitted).  Accordingly, to establish a violation of section 1962(d) as alleged in counts 5, 6 and 8,

5   Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the

6   defendants agreed to commit, or participated in, a violation of two predicate offenses. *See id.*;

7   *accord Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

8            The Court agrees with the Flux Defendants that the Fourth Amended Complaint contains

9   no factual allegations that any Flux Defendant had knowledge and awareness of the alleged RICO

10   scheme.  Without pointing to any factual allegations, Plaintiffs argue that they have adequately

11   pled that each Flux Defendant had knowledge of at least two RICO violations through Flux's

12   continued use of Plaintiffs' trade secrets.  *See* Opp'n to Flux Mot. at 7-8, ECF 42.  Without citing

13   to any legal authority, Plaintiffs then assert that their conspiracy claims are sufficient because the

14   Flux Defendants continued to work at Flux and committed "an indefinite number of predicate acts

15   going into the future, as each new 'use' of Plaintiffs' trade secrets constitutes a new and

16   independent predicate act." *Id.* at 8.[15]  Plaintiffs thus rely solely on the Flux Defendants' alleged

17   misappropriation of trade secrets in Mr. Attia's case, and do not even attempt to argue that any of

18   the Flux Defendants were involved in the six lawsuits that allegedly show a pattern of RICO

19   activity.  *See id.* at 8-9 ("Just as Plaintiffs do not need to allege the Flux Defendants agreed to

20   commit two specific acts, Plaintiffs do not need to plead each Flux Defendants' agreement to

21   engage in acts constituting a pattern.").

22            In light of the short shrift provided in defense of Plaintiffs' conspiracy allegations, the

23   Court similarly declines to recite all of the deficiencies in the conspiracy claims here.  The Court

24   notes only that in addition to the myriad of reasons for dismissal of the RICO claims discussed at

25   _____

26   [15] Plaintiffs' theory that "ongoing use" of trade secrets can somehow constitute *two* predicate acts
     under RICO is entirely unsupported and illogical.  Plaintiffs do not provide any legal authority
27   authorizing a single trade secret dispute to serve as the basis for *two* predicate acts under RICO
     merely because a defendant did not stop the alleged use.  Accepting Plaintiffs' theory would turn a
28   single trade secret misappropriation claim into a RICO offense every time a defendant violated the
     DTSA and then did not immediately stop their allegedly unlawful use of the trade secrets.

United States District Court
Northern District of California

1    length above, any amended pleading must also allege plausible *facts* suggesting that Defendants

2    were aware of the essential nature and scope of the RICO scheme, and otherwise agreed to

3    participate in a scheme that meets RICO's substantive requirements—including a plausible pattern

4    of racketeering activity.  *See Baumer*, 8 F.3d at 1346; *Howard*, 208 F.3d at 751.

5         In the alternative, even if the Court were to assume that Plaintiffs have adequately pled the

6    Flux Defendants' involvement in misappropriation of Mr. Attia's trade secrets,[16] Plaintiffs would

7    need to allege that the Flux Defendants agreed to commit, or participated in, at least one other

8    predicate act of trade secret misappropriation.  *See Howard,* 208 F.3d at 751.  As pled, *Howard*'s

9    alternate rubric that allows a plaintiff to demonstrate a conspiracy by alleging that a defendant

10   agreed to commit two distinct predicate offenses is also not satisfied.  *Id.*  The Flux Defendants

11   persuasively march through each of the six lawsuits that form the basis of Plaintiffs' alleged RICO

12   pattern, and demonstrate that no Flux Defendant is alleged to have been involved in the projects or

13   technology at issue in those cases, the meetings that took place, or the decisions that were made.

14   *See* Flux Mot. at 17-20.  Indeed, at the time that Google allegedly stole the trade secrets of other

15   inventors, Flux was not even a legal entity and some of the individual Flux Defendants did not

16   work at Google.  *Id.*  There are simply no plausible facts to suggest that any Flux Defendant was

17   connected to or agreed to participate in trade secret theft as alleged in the six lawsuits against

18   Google.  In any event, the Court need not consider allegations from the six lawsuits as predicate

19   acts of criminal trade secret misappropriation because the pleading currently fails to comply with

20   Rule 11.

21        Plaintiffs' failure to adequately plead a substantive violation of RICO by any defendant

22   similarly precludes their conspiracy claims.  For all of these reasons, and those discussed above,

23   Defendants' motions to dismiss counts 5, 6, and 8 for failure to plead a RICO conspiracy are

24   GRANTED WITH LEAVE TO AMEND.

25   _____

26   [16] The Court cannot assume this based on the facts alleged.  In fact, the timing of the alleged trade secret misappropriation in Mr. Attia's case ultimately may be fatal to Plaintiffs' RICO conspiracy claims against the Flux Defendants.  For example, as pled, no Flux Defendant even enters the

27   factual picture until after Mr. Attia was allegedly induced by Google executives to reveal his proprietary information, signed the various contracts at issue, and was ultimately squeezed out of

28   Project Genie.  *See, e.g.*, 4AC ¶¶ 2, 26-35.

United States District Court
Northern District of California

### III.     PLAINTIFFS' MOTION FOR PARTIAL REMAND

While Plaintiffs fervently request leave to amend their federal RICO claims, they simultaneously request that the Court decline to exercise supplemental jurisdiction over their state law claims.  *See* ECF 38.  In moving for a partial remand of the state law claims only, Plaintiffs rely heavily on the procedural history of this case in state court, including the discovery that has occurred to date and the state court's decision to bifurcate trial on the state law claims from the newly alleged RICO allegations.  *Id.*  Defendants oppose remand in the event that the RICO claims survive.  *See* ECF 54, 57.  Although the Court has now permitted amendment on the RICO claims, none of Plaintiffs' arguments persuades the Court that remand of the state law claims is appropriate at this time.

A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Under § 1367(c), however, a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim where one or more of the following circumstances exists:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Ninth Circuit has held that § 1367 *requires* that the court exercise supplemental jurisdiction pursuant to § 1367(a) unless such exercise would destroy diversity jurisdiction or one of the specifically enumerated exceptions set forth in § 1367(c) applies.  *See Executive Software N. Am., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994). Courts also have supplemental jurisdiction over claims that arise from a common nucleus of operative facts. *See Brady v. Brown*, 51 F.3d 810, 815-16 (9th Cir.

1  1995) ("The operative facts for both the RICO and the state law claims are the same actions

2  described… There was thus a common nucleus of operative facts encompassing both the state and

3  federal claims.")

4  While discretion to decline to exercise supplemental jurisdiction over state law claims is

5  triggered by the presence of one of the conditions in § 1367(c), that discretion is further informed

6  by "judicial economy, convenience, fairness, and comity"—the *Gibbs* factors.  *See United Mine*

7  *Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d

8  999, 1001 (9th Cir. 1997).

9  The Court finds that supplemental jurisdiction should be exercised over Plaintiffs' state

10  law claims because the claims arise from a common nucleus of operative facts with the federal

11  RICO claims and none of the exceptions of § 1367(c) applies.  Plaintiffs do not argue that the state

12  law claims do not arise from a common nucleus of operative facts.  Their arguments are based

13  almost exclusively on the § 1367(c) factors.  Plaintiffs' avoidance of the common nucleus

14  requirement is telling, as is their inability to counter Defendants' arguments that courts virtually

15  always maintain supplemental jurisdiction over state law claims in RICO cases.  *See* Opp'n to

16  Remand Mot. at 5 n.2, ECF 54 (collecting cases).

17  A common nucleus of operative facts clearly exists because Mr. Attia's state law trade

18  secret claim is the primary "predicate act" supporting Plaintiffs' RICO claims.  The other state law

19  claims for breach of contract against Google and declaratory relief are also based on the same fact

20  pattern as the trade secret claim, which Plaintiffs attempt to allege as the predicate act underlying

21  their RICO claims.  Google's breach of contract counterclaims against Attia PC are also factually

22  related to Plaintiffs' contract and trade secret claim at issue.  Plaintiffs' argument in their reply

23  brief that the common nucleus of operative facts between Plaintiffs' RICO claim and Mr. Attia's

24  state law trade secret claim "is small and exists only at a very high level," is not persuasive.  *See*

25  Reply ISO Remand at 1, ECF 60.  Severing and remanding the state law claims to state court

26  while the RICO claims remain in federal court is inappropriate in light of the overlapping factual

27  allegations.

28  Plaintiffs argue at length that the state law claims raise novel and complex issues of state

United States District Court
Northern District of California

law.  *See* Remand Mot. at 8-13; *see also* § 1367(c)(1).  The Court is not persuaded that any novel

or complex issues exist warranting separation of Plaintiffs' case into two lawsuits.  As Defendants

point out, Plaintiffs do not cite to a single case where a court found a trade secret claim "novel"

within the meaning of § 1367.  *See* Opp'n to Remand at 8.  Rather, Federal courts, including this

one, routinely handle trade secret claims of the variety alleged in Plaintiffs' case.  *See, e.g.*,

*Cinebase Software, Inc. v. Media Guar. Tr., Inc.*, No. C98-1100 FMS, 1998 WL 661465, at *6

(N.D. Cal. Sept. 22, 1998) ("Defendant argues that the state law issues, particularly those

pertaining to plaintiff's trade secrets claim, are novel and complex and that they substantially

predominate.  This argument is not persuasive. Federal courts routinely handle trade secrets

matters.")

Backtracking entirely from their argument that the state law claims are not significantly

factually related to the federal RICO claims, Plaintiffs argue that the state law trade secret claim

predominates within the meaning of § 1367(c)(2) because it is "an essential predicate to Plaintiffs'

RICO claim."  *See* Reply ISO Remand at 2.  Plaintiffs point out that the state court judge stayed

discovery and trial on the RICO claims pending resolution of the state law claims, which shows

that "Plaintiffs' RICO claim is entirely dependent upon and subordinate to Mr. Attia's trade secret

claim."  *Id.*[17]  The Court disagrees with this assumption, as the record indicates that the state court

actually adopted Plaintiffs' proposal to bifurcate the state and federal claims in order to limit the

*prejudice* to Google arising from adding five burdensome RICO claims based on allegations of

trade secret misappropriation in several other lawsuits over the course of a decade.  *See* Exh. L to

Notice of Removal, ECF 1-1 at 31.  Plaintiffs have not shown that the state law claims

predominate—let alone "substantially predominate"—over the RICO claims.  *See* § 1367(c)(2).

By their own doing, Plaintiffs made the strategic decision to attempt to turn this state law trade

[17] Plaintiffs' motion for partial remand also appears to be based on the misperception that this Court will adopt the state court's order bifurcating the state and federal claims such that the RICO claims "will not be litigated unless and until Mr. Attia prevails on his state law claim of misappropriation of trade secrets."  *See* Remand Mot. at 14.  Plaintiffs' sophisticated counsel clearly understood that Defendants were entitled to remove this action to federal court upon the addition of the RICO claims to the pleadings.  This Court has not adopted and is not bound by the state court's bifurcation approach or the discovery orders in the state court proceedings.

United States District Court
Northern District of California

secret misappropriation case into a federal RICO case.  That the case has a long history in state court does not convince this Court that it should decline to exercise supplemental jurisdiction.

Finally, the *Gibbs* factors of "judicial economy, convenience, fairness, and comity" also do not weigh in favor of partial remand.  *See Acri*, 114 F.3d at 1002.  Given the nearly identical nature of the factual allegations involved, judicial economy favors hearing this case in one court. The Court thus agrees with Defendants that exercising supplemental jurisdiction over the state law claims would serve the purpose of judicial economy to avoid the wasteful duplication in parallel proceedings.  *See* Opp'n to Remand at 10-13.  The court finds that convenience and fairness to the parties also favors exercising supplemental jurisdiction over the state law claims.  As for "comity," while exercising supplemental jurisdiction over state law claims can deprive the California state courts of an opportunity to interpret issues of state law, this factor does not tip the balance of the *Gibbs* factors in favor of declining to exercise supplemental jurisdiction.  Plaintiffs concede that this Court's exercise of supplemental jurisdiction is discretionary in this case, and they cannot show that the *Gibbs* factors favor pursuing their state law claims separately.

Of course, given the several deficiencies identified above, Plaintiffs may choose not to amend their RICO claims.  In those circumstances, the analysis would be vastly different and remand of the case to state court for trial would be appropriate.  As it stands, however, the state law claims will be litigated in this Court so long as Plaintiffs choose to pursue their RICO claims. For the foregoing reasons, the Court DENIES Plaintiffs' motion for partial remand and will exercise supplemental jurisdiction over the related state law claims.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1)    Defendants' Motions to Dismiss the RICO claims in the Fourth Amended Complaint (Causes of Action Four, Five, Six, Seven, and Eight) are GRANTED WITH LEAVE TO AMEND;

United States District Court
Northern District of California

(2)   Any amended complaint shall be filed on or before **August 13, 2018**.  The Court requests that the Chambers Copy of any amended complaint be a redlined version, in color;

(3)   Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order and at the March 8, 2018 hearing will result in dismissal of Plaintiffs' RICO claims with prejudice;

(4)   Plaintiffs' Motion for Partial Remand is DENIED;

(5)   If Plaintiffs choose not to amend their RICO claims, they shall notify the Court **on or before August 13, 2018.**  In those circumstances, the parties shall advise the Court whether they stipulate to remand the remaining state law claims.

Dated: June 13, 2018

_____
BETH LABSON FREEMAN
United States District Judge