```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4
    ATTIA, ET AL,                  )   CV-17-6037-BLF
5                                  )
                     PLAINTIFF,    )   SAN JOSE, CALIFORNIA
6                                  )
             VS.                   )   FEBRUARY 14, 2019
7                                  )
    GOOGLE, LLC, ET AL,            )   PAGES 1-22
8                                  )
                     DEFENDANT.    )
9                                  )
    _____)
10
                     TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE BETH LABSON FREEMAN
                   UNITED STATES DISTRICT JUDGE
12

13                     A P P E A R A N C E S

14       FOR THE PLAINTIFF:     BY:  ERIC WILLIAM BUETHER
                                BUETHER JOE & CARPENTER, LLC
15                              1700 PACIFIC AVENUE, SUITE 4750
                                DALLAS, TX 75201
16

17       FOR THE DEFENDANT:     BY:  CHARLES TAIT GRAVES
                                JOSHUA BASKIN
18                              SHELBY TSAI
                                WILSON SONSINI GOODRICH & ROSATI
19                              ONE MARKET STREET
                                SPEAR TOWER, SUITE 3300
20                              SAN FRANCISCO, CA 94105

21

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23    OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

 1       <u>APPEARANCES CONTINUED:</u>

 2       FOR THE PLAINTIFF:    **BY:  JAMES WES CHRISTIAN**
                                         CHRISTIAN SMITH AND JEWELL LLP

 3                                         2302 FANNIN STREET, SUITE 500
                                         HOUSTON, TX 77002

 4

 5       FOR THE DEFENDANT:    **BY:  JOSHUA LOUIS RAYES**
                                             **ROBERT JOHN KENT**

 6                                         TURNER BOYD LLP
                                         702 MARSHALL STREET, SUITE 640

 7                                         REDWOOD CITY, CA 94063

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          SAN JOSE, CALIFORNIA              FEBRUARY 14, 2019

 2                    P R O C E E D I N G S

 3          (COURT CONVENED AT 9:48 A.M.)

 4               THE CLERK:  CALLING CASE 17-6037.  ATTIA, ET AL

 5     VERSUS GOOGLE, ET AL.

 6          COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 7               MR. GRAVES:  GOOD MORNING, YOUR HONOR.

 8          CHARLES GRAVES FOR THE GOOGLE DEFENDANTS, AND WITH ME IS

 9     SHELBY TSAI.

10               THE COURT:  HELLO, MR. GRAVES.

11               MR. CHRISTIAN:  GOOD MORNING, YOUR HONOR.

12           WES CHRISTIAN FOR THE PLAINTIFF, WITH MY COLLEAGUE

13     ERIC BUETHER.

14               THE COURT:  MR. CHRISTIAN, GOOD MORNING.

15               MR. KENT:  AND YOUR HONOR, ROBERT KENT OF TURNER BOYD

16     FOR FLUX AND FLUX DEFENDANTS.  I HAVE WITH ME JOSH RAYES, ALSO

17      FROM TURNER BOYD.

18               THE COURT:  GOOD MORNING.  ALL RIGHT.

19           WELL, WE'VE BEEN HERE BEFORE.  AND LET ME JUST GIVE YOU MY

20     THOUGHTS.  I DON'T THINK THERE WILL BE ANY SURPRISE HERE.

21           I'M NOT PERSUADED, MR. CHRISTIAN, THAT I SHOULD CHANGE --

22     I'M SORRY -- YEAH, MR. CHRISTIAN, SORRY, YOU ARE STANDING ON

23     THE WRONG SIDE.

24               MR. CHRISTIAN:  WELL, IT'S A LITTLE MISLEADING, JUST

25      FOR THE RECORD, BOB BLAKEY WAS GOING TO BE HERE, BUT I'M
```

1    SUB'ING FOR HIM, AND OBVIOUSLY I'M NOT THE AUTHOR OF THE

2    FEDERAL RICO STATUTES.

3            THE COURT:  PLEASE, LET MR. BLAKEY KNOW THAT I WAS

4    LOOKING FORWARD TO SEEING HIM AGAIN AND ENGAGING IN THAT

5    DISCUSSION THAT I THINK WE WERE QUITE RUSHED ON LAST TIME.

6            MR. CHRISTIAN:  HE'S NOT WELL, UNFORTUNATELY.

7            THE COURT:  OH, I'M SORRY.  I'M SORRY.  AND HE LIVES

8    IN THE MIDWEST, I THINK.

9            MR. CHRISTIAN:  HE LIVES IN PHOENIX, ARIZONA.

10           THE COURT:  ALL RIGHT.  WELL, HE'S NOT SUFFERING THE

11   COLD WEATHER THEN.

12       I JUST DON'T THINK THAT STANDING HAS BEEN ESTABLISHED

13   UNDER RICO.  AND THIS VERY DIFFICULT ISSUE OF THE

14   EXTINGUISHMENT OF THE ALLEGED TRADE SECRETS BY THE FILING AND

15   PUBLICATION OF THE PATENT APPLICATION IS -- IT'S A TROUBLING

16   SET OF ALLEGATIONS.  THERE'S NO QUESTION IN MY MIND.

17       AND AS I SAID IN MY PRIOR ORDER, I THINK THAT YOUR

18   CLIENT'S RIGHTS ARE, IN FACT, COMPLETELY PROTECTED UNDER STATE,

19   THE UNIFORM TRADE SECRETS ACT, WHICH HAS BEEN ALLEGED.

20       AND MUCH TO MR. GRAVE'S DISAPPOINTMENT, I AM GOING TO

21   DECLINE SUPPLEMENTAL JURISDICTION AND NOT RULE ON THE STATE

22   CLAIMS.

23       AND THE REASON FOR THAT, ASSUMING THAT I HOLD ON TO MY

24   TENTATIVE HERE, IS THAT THIS CASE HAD A LONG HISTORY IN STATE

25   COURT.  IT'S MY UNDERSTANDING THAT THE STATE TRADE SECRET

1       CLAIMS SURVIVED DEMURRER IN STATE COURT.

2             WHEN YOUR CLIENT CHOSE TO FILE THE FEDERAL CLAIMS AND

3       GOOGLE REMOVED THE CASE, IT OF COURSE CAME TO ME.  AND ALTHOUGH

4       I HAVE FULL AUTHORITY TO RULE ON THE STATE CLAIMS IF I CHOSE

5       TO, I REALLY THINK THIS CASE ALWAYS BELONGED IN STATE COURT.

6       IT SHOULD NEVER -- THESE AMENDMENTS SHOULD NEVER HAVE BEEN

7       MADE, BECAUSE I THINK THEY JUST DON'T REALLY GET US TO WHERE

8       YOU WANT TO BE.

9             AND I'M GOING TO LET THIS CASE RETURN TO STATE COURT AND

10      LET -- I THINK YOU HAD JUDGE KIRWAN BEFORE?

11            MR. CHRISTIAN:  YES, WE DID.

12            THE COURT:  AND HE'S NOT HANDLING COMPLEX ANYMORE, SO

13      MAYBE JUDGE WALSH WILL TAKE A FRESH LOOK AND DEAL WITH IT

14      DIFFERENTLY.  BUT AT THIS POINT, I'M NOT GOING TO DRIVE A STAKE

15      THROUGH THE HEART OF THE CASE, ONLY THROUGH THESE NEW CLAIMS.

16            SO I'M GLAD TO HEAR FROM YOU FURTHER ON THE RICO AND THE

17      DEFEND TRADE SECRETS ACT CLAIMS, THEY REALLY GO HAND IN HAND.

18      IF THE EXTINGUISHMENT HAD BEEN AFTER 2016, OF COURSE I WOULD

19      LOOK AT THIS DIFFERENTLY.  IT'S THIS EXTINGUISHMENT IN 2012

20      WHEN THE PUBLICATION OCCURRED.  AND YOU'VE NOW CLARIFIED THE

21      ALLEGED TRADE SECRET, IT'S COMPLETELY PARALLEL IN THE PUBLISHED

22      PATENTS.

23            MR. CHRISTIAN:  WE HAVE.

24            THE COURT:  AND SO I HAVE NO DOUBT THAT ALL OF THE

25      ALLEGED TRADE SECRETS WERE EXTINGUISHED.  YOU ALLEGE THEY WERE

1    EXTINGUISHED.  YOU ACKNOWLEDGE THAT BECAUSE OF THE PUBLICATION.

2         AND SO I THINK THAT THEN DEFEATS YOUR USE ARGUMENT,

3    BECAUSE I CERTAINLY AGREE WITH YOU, THE CONTINUED USE UNDER THE

4    FEDERAL STATUTE CAN BE A VIOLATION.  BUT YOU CAN'T -- THERE'S

5    NO LONGER USE OF A TRADE SECRET, THERE'S USE OF MAYBE, I MEAN,

6    THERE MAY STILL BE WRONGDOING, BUT IT'S NOT A TRADE SECRET USE.

7         SO THAT'S WHERE I COME OUT.  I DON'T THINK YOU HAVE THE

8    PREDICATE ACTS BECAUSE THERE'S NO RETROACTIVITY OF RICO, AND I

9    DON'T THINK YOU CAN MAKE OUT THE DTSA CLAIM, AND THAT'S

10   D-T-S-A.

11        MR. CHRISTIAN:  ALL RIGHT.  SO I WOULD STILL LIKE TO

12   MAKE A PROFFER.

13        THE COURT:  I WOULD LIKE THAT, YES, THANK YOU.

14        MR. CHRISTIAN:  AS USUAL, YOU ARE VERY ASTUTE, YOU

15   CAUGHT ON TO OUR NEW CONCEPT WHICH IS REALLY ABOUT USE.

16        AND WE ARE -- TO BE CLEAR WITH THE COURT, WE ARE

17   SEPARATING USE FROM THE ULTIMATE ACQUISITION AND DISCLOSURE.

18   TO ME, YOU CAN TAKE SOMETHING, BUT THAT'S DIFFERENT THAN USING

19   IT.  NOW, I WOULD ADMIT THAT MOST THE TIME WHEN YOU TAKE IT,

20   YOU ARE GOING TO USE IT, BUT THE STATUTE DIFFERENTIATES, IT

21   SAYS "OR," NOT "AND."  OKAY.  "OR USE."

22        AND SO WHAT I THOUGHT WAS INSTRUCTIVE, FRANKLY, WAS THE

23   123 EXTERIORS CASE WHICH CAME OUT ACTUALLY AFTER THE AVAGO

24   CASE, IT CAME OUT AUGUST 1ST, 2018.  NOW GRANTED, SO WE DON'T

25   MISLEAD THE COURT, THAT'S AN EASTERN DISTRICT OF PENNSYLVANIA

1     CASE.

2               THE COURT:  I NOTED THAT.

3               MR. CHRISTIAN:  BUT AT LEAST I THINK THAT'S A GOOD

4      COURT AND GOOD DISTRICT, FRANKLY, HAVING PRACTICED THERE

5      BEFORE.

6               THE COURT:  BUT THAT WAS DISCLOSURE TO A THIRD PARTY,

7      NOT EXTINGUISHMENT OF THE TRADE SECRET, WASN'T IT?

8               MR. CHRISTIAN:  NO, IN THAT CASE -- LET'S JUST READ

9      FROM THAT CASE REAL QUICK BECAUSE I DON'T WANT TO MISLEAD

10     ANYTHING.  AND I'M GOING TO READ FROM A SMALL EXCERPT.  AND

11     AGAIN, THIS IS ALL IN OUR BRIEF, SO THERE'S NO NEW CASES HERE.

12          THIS IS PAGE 6 OF THE CASE, FOOTNOTE 6 UNDER THE TITLE,

13     COUNT 1, THEFT OF TRADE SECRETS.  THE DTSA DEFENSE

14     MISAPPROPRIATION IS THE ACQUISITION OF A TRADE SECRET OF

15     ANOTHER PERSON WHO KNOWS OR HAS REASON TO KNOW THAT THE TRADE

16     SECRET WAS ACQUIRED BY IMPROPER MEANS OR DISCLOSURE.  IT HAS

17     BEEN WIDELY INTERPRETED TO REACH A DEFENDANT'S CONTINUED USE OF

18     TRADE SECRETS AFTER THE ENACTMENT, EVEN IF THE SECRETS WERE

19     ACQUIRED EARLIER."

20          OKAY.

21               THE COURT:  THE SECRETS ACQUIRED EARLIER.

22               MR. CHRISTIAN:  RIGHT.

23          WELL, OKAY, BUT I'M GOING TO SUBMIT TO THE COURT THAT THAT

24     FALLS UNDER THE EQUITABLE ESTOPPEL ISSUE, AND THEN WE ARE GOING

25     TO TALK THEN ABOUT THE RELIGIOUS TECH CASE, WHICH IS A CASE OUT

1      OF THIS NORTHERN DISTRICT, WHICH WE CITED.  AGAIN, ALL OF THIS

2      WAS CITED IN OUR PAPERS, AND THEN WE ARE GOING TO TALK ALSO

3      ABOUT THE UNDERWATER STORAGE CASE WHICH IS AN OLDER CASE, 1966

4      CASE, DISTRICT OF COLUMBIA, BECAUSE I THINK YOU HAVE TO LOOK AT

5      IT TWO WAYS.

6          I WILL CONFESS TO THE COURT THAT BOTH OF THOSE ELEMENTS,

7      YOU KNOW, TO SOME EXTENT ARE NECESSARY, BECAUSE IN ORDER TO

8      SEPARATE THE USE FROM THE ACQUISITION, BECAUSE CLEARLY THE

9      ACQUISITION OCCURRED, CLEARLY IT GOT CONVERTED INTO A PATENT,

10     ALTHOUGH WE HAD PUT IN OUR COMPLAINT THAT THAT WAS FRAUDULENTLY

11     DONE, INDUCED TO DO SO UNDER CONSIDERATION, THAT WAS NEVER

12     PAID.  YOU ACKNOWLEDGE THAT IN THE ORDER --

13         THE COURT:  WELL, AND I THINK YOU MAY STILL HAVE

14     REMEDIES.  MR. GRAVES HAS POINTED OUT WHERE THAT MIGHT NOT BE

15     SUCCESSFUL.  BUT I'M NOT GOING TO RULE ON IT.

16         BUT I CERTAINLY -- IF THERE'S A VALID CONTRACT ACTION AND

17     YOUR CLIENT SHOULD HAVE BEEN PAID, THEN YOU CAN STILL LITIGATE

18     THAT, MAYBE.  I MEAN, YOU KNOW, IT'S UP TO ANOTHER JUDGE TO

19     MAKE THAT DECISION.

20         MR. CHRISTIAN:  AND I AGREE WITH THAT.  EXCEPT OUR

21     POSITION IS WE HAVE DEMONSTRATED, AS THE COURT REQUESTED US TO

22     DO, THREE OR FOUR INSTANCES OF USE, POST MAY 2016.

23         AND IF WE CAN ALSO DEMONSTRATE THAT THEY, THE GOOGLE

24     DEFENDANTS, FLUX, ET CETERA, CANNOT HIDE BEHIND A SHIELD, THAT

25     THEY FRAUDULENTLY INDUCED SOMEBODY WITH INTO CREATING, OKAY,

1    THEN ULTIMATELY, I THINK WE GET THERE UNDER FEDERAL RICO ON THE

2    STANDING ISSUE.

3            THE COURT:  YOU ARE CREATING A BACKDOOR TO

4    RETROACTIVITY, IS REALLY THE PROBLEM HERE.  AND I'M NOT WITH

5    YOU ON THAT THEORY.  THAT'S THE PROBLEM THAT I SEE WITH IT.

6        AND WITH THE EQUITABLE ESTOPPEL, THERE CLEARLY ARE OTHER

7    REMEDIES FOR THE WRONGDOING THAT YOU ALLEGE.

8            MR. CHRISTIAN:  AND I THINK THE COURT PROPERLY STATED

9    THAT IN YOUR JUNE ORDER.  BUT MY COUNTER TO THAT, FRANKLY

10   YOUR HONOR, IS THIS, IS THAT ONCE SOMETHING IS CHARACTERIZED

11   RIGHT OR WRONG, EITHER THEY ARE HIDING BEHIND A SHIELD THAT

12   THEY FRAUDULENTLY CREATED THAT STEMMED OUT OF A THEFT, OR THEY

13   DIDN'T.

14       IF THEY DID, WHICH IS WHAT WE ALLEGE, OKAY, THEN THEY

15   SHOULDN'T BE ABLE TO TAKE THE POSITION THAT, LOOK, YOU CAN USE

16   IT FOR A STATE LAW TRADE SECRETS CLAIM, BUT YOU CAN'T USE IT

17   FOR PREDICATE ACT OR RICO.

18       RESPECTFULLY, THAT MAKES NO SENSE TO ME.

19           THE COURT:  STATE LAW DOESN'T HAVE THIS SHARP DATE IN

20   2016 AND A NONRETROACTIVITY.  IT'S JUST AN UNUSUAL

21   CIRCUMSTANCE, IT'S A PROBLEM THAT WILL END PRETTY SOON.  WE ARE

22   GOING TO GET OVER THAT HURDLE, AND THESE FEW CASES THAT GOT

23   CAUGHT ON THE RETROACTIVITY WILL BE AN INTERESTING FOOTNOTE TO

24   HISTORY.

25           MR. CHRISTIAN:  ALL RIGHT.  SO AT THE END OF THE DAY,

1      WHAT I HEAR THE COURT SAYING IS YOU SIMPLY DON'T THINK USE

2      STANDS ALONE.  YOU THINK USE REVERTS BACK TO THE ACQUISITION,

3      AND RESPECTFULLY, THAT'S NOT OUR POSITION.

4              THE COURT:  I THINK IT HAS TO BE USE OF A TRADE

5      SECRET.

6              MR. CHRISTIAN:  RIGHT.

7              THE COURT:  AND THERE'S NO TRADE SECRET AFTER 2012.

8              MR. CHRISTIAN:  AND THE COURT BELIEVES THAT EVEN

9      THOUGH, AS WE PLED THAT THEY WRONGFULLY MISCHARACTERIZED IT AND

10     DUPED OUR CLIENT INTO RE-CHARACTERIZING IT IN A PATENT.

11             THE COURT:  SO UNFORTUNATELY, AT LEAST MY VIEW OF IT

12     IS ALL THAT YOU ALLEGE, AND I WILL ACCEPT THE PLEADINGS ON

13     THE -- THAT YOUR CLIENT WAS DUPED, BUT HE WAS -- HE SIGNED THE

14     CO-INVENTOR DECLARATION.  AND ALL HE WAS DUPED INTO IS

15     BELIEVING HE WOULD BE PAID.  AND HE CAN STILL PURSUE A CLAIM TO

16     BE PAID.

17         SO IT WASN'T -- HE'S NOT ACTUALLY ALLEGING THAT HE

18     EXPECTED THESE TRADE SECRETS TO ALWAYS REMAIN TRADE SECRETS.

19     AND SOME INVENTORS ACTUALLY CHOOSE, YOU KNOW THAT, TO ONLY WORK

20     IN THE TRADE SECRET AND PROTECT IT AND NOT FILE PATENTS.

21         SO HE KNEW WHAT A PATENT WAS, HE'S A VERY SOPHISTICATED

22     MAN, AND HE KNEW THAT THERE WOULD BE PUBLICATION, SO HE WAS

23     RIGHTLY OR WRONGLY EXPECTING SIGNIFICANT MONETARY PAYMENT FOR

24     HIS OWN INVENTIONS.

25             MR. CHRISTIAN:  TRUE.

1    BUT DON'T YOU AGREE, YOUR HONOR, THAT BASED ON OUR PLEAS,

2    AT LEAST WHICH THE COURT OBVIOUSLY HAS TO ASSUME IS TRUE, THAT

3    WE PLED THAT THERE WERE MATERIAL OMISSIONS OF FACT.

4    WE DON'T DISPUTE THAT HE'S A CO-AUTHOR ON THE PATENT.  WE

5    DON'T DISPUTE THAT THE PATENT WAS PUBLISHED AND ISSUED, WE

6    DON'T DISPUTE ANY OF THE FACTS YOU JUST RECITED.

7    BUT WHAT WE DO SAY IS YOU CAN'T JUST LOOK AT THAT IN AN

8    ISOLATED SHELL, YOU HAVE TO LOOK AT IT IN THE CONTEXT OF THE

9    MATERIAL OMISSIONS THAT WERE LEFT OUT.  AND WHERE THAT GETS YOU

10   IS HE WOULD HAVE NEVER AGREED TO THE PATENT IF HE KNEW THAT

11   THEY WERE GOING TO DO WHAT THEY ARE DOING NOW, WHICH IS STEAL

12   IT AND USE IT AND BLOCK HIM OUT.  DOES THAT MAKE SENSE?

13   MR. BUETHER:  YOUR HONOR, I COULD ADDRESS THAT

14   BECAUSE THAT DOES TOUCH A LITTLE BIT ON THE STATE TRADE SECRET

15   CLAIM.

16   IT'S ANALOGOUS TO -- THERE ARE SEVERAL ANALOGIES.  ONE

17   WOULD BE WHEN I GO RENT THE CAR, YOU GIVE ME THE CAR, I SIGN AN

18   AGREEMENT TO PAY YOU FOR THE CAR, I HAVE TO RETURN IT IN THREE

19   DAYS.  I TAKE IT AND DRIVE TO NEW YORK CITY AND HANG OUT IN

20   BROOKLYN, YOU KNOW, AND SAY, OH, YOU WANT TO GET PAID, YOU

21   KNOW, I DIDN'T STEAL YOUR CAR, I JUST EXTENDED, BY MY OWN

22   UNILATERAL ACTION, MY USE OF THE CAR.

23   NO, THAT'S AUTOMOBILE THEFT.  YOU WOULD GO TO PRISON FOR

24   DOING THAT BECAUSE YOU'VE STOLEN THE CAR UNDER FALSE PRETENSES.

25   WHAT WE ALLEGE HERE IS THAT THE ASSIGNMENTS AND THE

1    AGREEMENTS THAT MR. ATTIA SIGNED WERE CONDITIONAL, JUST LIKE AN

2    ASSIGNMENT OF A PATENT CAN BE CONDITIONAL LIKE THE WATERMAN

3    CASE THAT, YOU LOAN ME MONEY, I ASSIGN YOU THE PATENT, BUT YOU

4    AGREE TO PAY FOR THE PATENT, THE MONEY THAT -- THE

5    CONSIDERATION, AND YOU JUST BLOW IT OFF, YOU JUST RENEGE ON

6    THAT.

7        IF THE ASSIGNMENT IS CONDITIONAL AND THE TITLE REVERTS

8    BACK OR THERE'S THE ASSIGNMENT WAS CONDITIONAL, THAT IS THEFT,

9    THAT IS NOT MERELY A BREACH OF CONTRACT, BECAUSE YOU HAVE TWO

10   DIFFERENT INTERESTS GOING HERE.  ONE IS ENFORCEMENT OF

11   PROMISES, CLEARLY THAT'S NOT AT ISSUE --

12          THE COURT:  AND THE THEFT OF THE TRADE SECRET TOOK

13    PLACE IN 2011 AND 2012 AT THE LATEST WHEN THE PUBLICATION

14    OCCURRED.

15          MR. BUETHER:  WE BELIEVE THAT ONCE THE -- THE

16    OBLIGATION TO COMPENSATE MR. ATTIA WAS TRIGGERED IN JUNE OF

17    2011 OR THIRTY DAYS AFTER THAT, WHENEVER HE SIGNED THOSE.  AND

18    SO GOOGLE WAS IN DEFAULT OF THAT OBLIGATION WHILE THE PATENT

19    APPLICATION WAS STILL CONFIDENTIAL.

20        THE REAL WRONGDOING WAS IF THEY WANT TO RENEGE AND SAY,

21    YOU KNOW WHAT, I DON'T REALLY WANT TO USE YOUR TRADE SECRETS,

22    YOU CAN HAVE THEM BACK AND WE WILL TEAR UP THIS STUFF AND WE

23    WILL JUST GO ON SEPARATELY.  BUT INSTEAD, THEY DID TWO BAD

24    THINGS, THEY KEPT THE CAR AND DIDN'T PAY FOR THE CAR, THEY JUST

25    TOOK IT.

```
1              THE COURT:  BUT I THINK THAT YOUR THEORY IS A --
2      THERE'S A BETTER THEORY UNDER -- I MEAN, YOU COULD EVEN HAVE A
3      CONVERSION CLAIM AND HAVE THESE PATENTS ASSIGNED TO MR. ATTIA
4      OR TO HIS COMPANY.
5              SO I'M IN THE SITUATION WHERE I'M NOT BLOCKING ANY FORM OF
6      REMEDY OR THE OPPORTUNITY FOR IT, BUT, YOU KNOW, THIS WHOLE
7      RICO THING, I HAVE GREAT RESPECT FOR MR. BLAKEY, AND AS I SAID,
8      I WOULD HAVE ENJOYED ENGAGING WITH HIM AGAIN, BUT I'M PRETTY
9      SURE THAT WHEN HE WROTE THAT STATUTE, THIS ISN'T WHAT HE WAS
10     THINKING ABOUT, THINKING ABOUT ORGANIZED CRIME.
11             MR. CHRISTIAN:  I WOULDN'T KNOW THE ANSWER TO THAT,
12     YOUR HONOR.
13             THE COURT:  MR. GRAVES?
14             MR. GRAVES:  YEAH.  I WANT TO MAKE A COUPLE OF POINTS
15     TO THE DTSA, AND THEN I WANT TO SPEAK ABOUT SUPPLEMENTAL
16     JURISDICTION, BECAUSE I THINK THERE'S SOMETHING YOU JUST SAID
17     THAT WILL IS REALLY IMPORTANT, AND I WANT TO TALK THROUGH THAT
18     ISSUE.
19             SO ON THE DTSA, THE HASBRO CASE, NOT THE 123 EXTERIORS
20     CASE, WHICH YOU ARE RIGHT, WAS ONLY ABOUT AN UNPUBLISHED
21     DISCLOSURE, THE HASBRO CASE IN THE DISTRICT OF RHODE ISLAND IN
22     NOVEMBER, FOLLOWED YOUR HOLDING FROM LAST SUMMER, IN A CASE
23     MUCH LIKE THIS ONE WHERE PATENT APPLICATIONS AND OTHER THINGS
24     LEAD TO THE PUBLICATION OF THE ALLEGED TRADE SECRETS BEFORE MAY
25     OF 2016 BY THE DEFENDANT.
```

1          WHAT THAT MEANS IS THAT ALL THREE COURTS TO HAVE TOUCHED

2     ON THIS ISSUE, <u>AVAGO</u>, YOUR ORDER LAST SUMMER, AND NOW THE

3     DISTRICT OF RHODE ISLAND, HAVE ALL AGREED THAT THERE IS NO DTSA

4     CLAIM WHEN THERE IS PRIOR PUBLICATION AND EXTINGUISHMENT OF THE

5     ALLEGED SECRETS.

6          THE EQUITABLE POINT IS REALLY SIMPLE, EQUITY DOESN'T MAKE

7     STATUTES RETROACTIVE.  CONGRESS MADE A DECISION.  AND WE ALL

8     KNOW AT ANY MOMENT IN TIME, YOUR HONOR, THAT THERE ARE LARGE

9     NUMBERS OF TRADE SECRET DISPUTES SWIRLING AROUND.

10         AND SO IN MAY OF 2016, THERE WERE PROBABLY HUNDREDS, IF

11    NOT THOUSANDS OF TRADE SECRET DISPUTES AROUND THE COUNTRY

12    GELLING AND COMING UP.  AND CONGRESS MADE A CONSIDERED CHOICE

13    NOT TO MAKE THE STATUTE RETROACTIVE.

14         WHAT THAT LITERALLY MEANS, WITH THAT BULK OF CASES OUT

15    THERE, IS THAT SOME WINNING CASES AND SOME LOSING CASES AND

16    SOME IN-BETWEEN CASES ARE ALL HELD TO BE NONRETROACTIVE.  SO

17    THE STRENGTH OR THE MERITS OR THE LACK THEREOF ARE REALLY

18    IRRELEVANT TO WHETHER CONGRESS' DECISION IS HELD TO.

19         AND I'M UNAWARE OF ANY THEORY THAT WOULD MAKE EQUITABLE

20    DOCTRINES OR TORT DOCTRINES OR ANYTHING LIKE THAT ABLE TO

21    OVERCOME CONGRESS' DECISION ON RETROACTIVITY.  SO I THINK YOU

22    ARE RIGHT ABOUT THAT.

23         YOU MENTIONED A MOMENT AGO THAT YOU THOUGHT THAT THERE

24    MIGHT BE A REMAINING CLAIM FOR RIGHT TO BE PAID.  AND I THINK

25    THERE'S SOMETHING REALLY IMPORTANT ABOUT SUPPLEMENTAL

1    JURISDICTION HERE.

2         FIRST, LET'S REMEMBER THAT THERE'S TWO DIFFERENT STATE LAW

3    CAUSES OF ACTION.  ONE IS A DTSA CLAIM, AS YOUR HONOR NOTED,

4    ONE IS A CONTRACT CLAIM, WHICH SAYS UNDER THIS CONTRACT, WE

5    WERE SUPPOSED TO BE PAID SOMETHING, PAID MONEY.

6         LET'S BE VERY CAREFUL TO SEPARATE THOSE TWO THINGS.

7    BECAUSE A BREACH OF CONTRACT CLAIM THAT SAYS I'M DUE A MONEY

8    PAYMENT BECAUSE I ALLEGE THAT SOMEBODY USED SOMETHING OR DID

9    SOMETHING, WOULD BE IRRELEVANT TO THE TRADE SECRET CLAIM.

10   THOSE ARE TWO DIFFERENT THINGS.

11        EVEN IF THE CONTRACT CLAIM HAD MERIT, AND IT DOESN'T, BUT

12   EVEN IF IT DID, THAT WOULDN'T UNDUE THESE PATENTS, IT WOULDN'T

13   UNDUE GOOGLE'S ABILITY TO PUBLISH THOSE PATENTS THROUGH THE

14   PTO, AS YOU MENTIONED.  AND IT WOULDN'T CREATE TRADE SECRETS

15   WHERE THEY HAVE BEEN ASSIGNED TO GOOGLE WITH ALL RIGHTS TITLE

16   AND INTEREST.

17        I THINK IT WOULD BE A MISTAKE IF THE NINTH CIRCUIT WERE TO

18   HEAR A PIECEMEAL APPEAL ON DTSA AND RICO THAT IT DIDN'T NEED TO

19   REACH IF THE STATE LAW UTSA CLAIM FAILED IN FRONT OF IT.

20        AND THERE'S SOMETHING REALLY IMPORTANT ABOUT WHY THAT

21   CLAIM FAILS, WHICH GOES TO THE DEFENSE OF THE PATENT SYSTEM.

22   THE PATENT SYSTEM, YOUR HONOR, REQUIRES FOR EVERY CO-INVENTOR,

23   TWO THINGS.  A DECLARATION, AND AN ASSIGNMENT UNDER THE CFO'S.

24        THOSE ARE ALL ATTACHED HERE.  THE PATENT SYSTEM DOES THAT

25   FOR A GOOD REASON, THAT RECORDATION OF TITLE PROVIDES

1    PREDICTABILITY AND CERTAINTY SO PATENTS CAN BE LICENSED, SOLD

2    AND LITIGATED WITHOUT THERE BEING SOME OTHER CLAIMANT LURKING

3    OUT THERE.  THAT CERTAINTY AND THAT PREDICTABILITY IS A PUBLIC

4    GOOD.

5         AND IN A SITUATION WHERE MR. ATTIA AGREED IN A CONTRACT

6    THAT IF GOOGLE FILED PATENT APPLICATIONS ON ANY PATENTS, HE

7    WOULD RECEIVE A PATENT LICENSE, AND HE'S NOT STANDING HERE

8    CLAIMING THAT HE DIDN'T GET THAT LICENSE OR HE DIDN'T GET WHAT

9    HE WANTED.  I DON'T SEE ANY WAY FOR THE TRADE SECRET CLAIM TO

10   GO FORWARD, I'M TALKING ABOUT THE STATE LAW CLAIM, I THINK IT

11   OUGHT TO BE BUNDLED INTO THE SAME APPEAL BECAUSE IT COMES AS A

12   PRECEDENT BEFORE IT EVEN REACHED DTSA.  AND IT REALLY HAS

13   NOTHING TO DO WITH THIS CLAIM FOR MONEY.  I CAN TELL YOU WHY I

14   THINK THAT IS WRONG TOO, BUT THAT'S A SEPARATE ISSUE.

15        AS YOU NOTED, MR. ATTIA EXPECTED NOT ONLY THAT THESE WOULD

16   BE PUBLISHED, BUT HE WOULD SEE THE CONSIDERATION HE BARGAINED

17   FOR ON THE FACE OF THE COMPLAINT.  HE HAS NOT FILED A CAUSE OF

18   ACTION SAYING, YOU GOOGLE, DID NOT GIVE ME A PATENT LICENSE.

19   HE'S SAYING THERE IS ANOTHER SECTION OF THE CONTRACT AND I

20   BREACHED THAT AND YOU GIVE ME SOME MONEY FOR THAT.  BUT THAT'S

21   UTTERLY INDEPENDENT OF HIS PATENT ASSIGNMENTS TO US.

22        AND I WOULD BE WORRIED IF WE WERE SENT BACK TO STATE COURT

23   AND HAD TO TALK TO JUDGE WALSH OR JUDGE KIRWAN ABOUT PATENT

24   DECLARATIONS AND THINGS LIKE THAT.  THIS IS ABOUT THE CLARITY

25   OF TITLE --

1          THE COURT:  THIS IS INTERESTING THOUGH BECAUSE CLAIMS

2     FOR PATENT OWNERSHIP ARE STATE COURT CLAIMS.  SO IN FACT,

3     THEY'RE NOT FEDERAL CLAIMS.

4          MR. GRAVES:  I DON'T BELIEVE IT'S A FEDERAL QUESTION

5     EITHER.  AND I THOUGHT REALLY HARD ABOUT IT.  AND HERE'S WHY,

6     IF YOU LOOK BACK AT THE AVTEC CASE, THE FOURTH CIRCUIT CASE,

7     THE ONE THAT SAYS YOU HAVE A RIGHT TO PUBLISH, THAT DEFEATS THE

8     CONFLICTING TRADE SECRECY, THEY DIDN'T BASE THAT ON FEDERALISM

9     OR COPYRIGHT PREEMPTION, IT'S JUST THE IDEA THAT YOU HAVE A

10    RIGHT TO PUBLISH.

11         BUT MY POINT TO YOU IS WE'VE GOT PATENT ASSIGNMENTS THAT

12    ARE CLEAR AS A BELL, WE'VE GOT A CONTRACT THAT SPECIFICALLY

13    GIVES HIM CONSIDERATION FOR THOSE PATENTS, WHICH IT'S NOT MORE

14    THAN, THAT'S WHAT HE ASKED FOR HE AND HIS FAMILY GET A PERSONAL

15    LICENSE TO USE THEM IN THEIR PERSONAL PRACTICE.

16         THAT'S THE TRADE SECRET CASE.  THE CONTRACT CASE SAYS PAY

17    ME MONEY, AND THAT'S WHAT MR. CHRISTIAN, WITH ALL DUE RESPECT,

18    WAS TALKING ABOUT.  SO WHY SHOULD THE NINTH CIRCUIT NOT HEAR A

19    VERY SIMPLE TRADE SECRET CASE WHERE SOMEBODY --

20         THE COURT:  WELL, I WILL JUST TELL YOU THAT EVEN IF I

21    WERE TO DETERMINE THAT YOUR ARGUMENTS ARE VERY STRONG, I'M NOT

22    LIKELY TO CLOSE DOWN THE CASE AT THE PLEADING STAGE.  AND ON

23    ISSUES LIKE THIS, I GENERALLY WOULD DEFER TO A MORE DEVELOPED

24    RECORD AND SUMMARY JUDGEMENT.

25         SO THAT'S JUST NOT, I DON'T THINK THAT WILL HELP.  AND SO

 1    THIS CASE WAS REMOVED, AND SO I WILL REMAND.  AND I DON'T

 2    ACTUALLY KNOW THE SCOPE OF THE APPELLATE RIGHTS UNDER THAT

 3    CIRCUMSTANCE, THAT'S FOR THE NINTH CIRCUIT AND YOU TO DECIDE

 4    AND NOT ME, AS TO WHEN AND WHERE THAT APPEAL IS RIPE.

 5         BUT DON'T -- I'M NOT -- AS I SAY, I THINK YOUR ARGUMENTS

 6    ARE VERY PERSUASIVE, MR. GRAVES, ON THOSE OTHER CLAIMS.  I

 7    RECOGNIZE THAT JUDGE KIRWAN SAW IT DIFFERENTLY UNDER STATE

 8    PLEADING REQUIREMENTS, AND I'M VERY RESPECTFUL OF THAT.  I

 9    THINK THIS CASE SHOULD HAVE STAYED IN STATE COURT, YOU WOULD

10    HAVE BEEN DONE BY NOW.

11         SO, YOU KNOW, I THINK THESE ISSUES OF LAW ON RICO AND DTSA

12    ARE REALLY GOOD ISSUES FOR THE NINTH CIRCUIT TO REVIEW.  I

13    DON'T THINK THAT THE STATE LAW PORTION OF IT IS NECESSARY FOR

14    WHAT I'VE DONE, I'VE CERTAINLY NOT ANALYZED THE STATE LAW

15    CLAIMS.  AND I DON'T KNOW WHEN YOU CAN GET TO THE NINTH CIRCUIT

16    ON THAT.  BUT YOU WILL MAKE YOUR DECISIONS ON IT.

17         I WILL ALSO SAY, BECAUSE I THINK YOU KNOW HOW I'M GOING TO

18    RULE, THIS DISPUTE HAS BEEN GOING ON FOR A LONG TIME, AND IT

19    SEEMS TO ME THAT AS COMPLICATED AS THE THEORIES OF LIABILITY

20    ARE, THE UNIVERSE OF REMEDIES IS LESS COMPLICATED.  AND IT

21    SEEMS TO ME THAT THE PARTIES SHOULD ENGAGE IN SERIOUS MEDIATION

22    AND TRY TO RESOLVE THIS BEFORE YOU JUST CONTINUE WITH MORE

23    YEARS OF LITIGATION.

24         AND SO I DON'T KNOW WHETHER YOU'VE TRIED THAT BEFORE,

25    MAYBE HAVE YOU.

```
1              MR. BUETHER:  WE DID ONCE, YES.

2              THE COURT:  AND MAYBE YOU KNOW A LOT MORE ABOUT THE

3    CASE, MAYBE HAVING THE RICO CLAIMS MOVED TO THIS NEXT LEVEL

4    WHERE THEY ARE REALLY OFF THE TABLE IN DISTRICT COURT, MAYBE

5    THAT WILL ASSIST IN LOOKING AT THESE REMEDIES.

6         BUT, YOU KNOW, MR. ATTIA IS NOT A YOUNG MAN, AS I RECALL,

7    AND SO IT MAY BE IN HIS INTEREST TO REENGAGE IN MEDICATION.

8         DID YOU USE A PRIVATE MEDIATOR?

9              MR. BUETHER:  WE DID, A FORMER JUDGE, AND I CAN'T

10   REMEMBER HIS NAME OFF THE TOP OF MY HEAD.  HE'S IN

11   SAN FRANCISCO.  I CAN SEE HIS FACE.

12        BUT YEAH, WE DID, AND, YOU KNOW, WE AGREE WITH YOU, THIS

13   HAS BEEN AROUND A LONG TIME, AND ESPECIALLY FOR THE ATTIA'S,

14   WHO ARE GETTING QUITE OLD, THEY WANT TO SEE A CLOSURE, I GUESS

15   YOU WOULD CALL IT, BEFORE IT'S TOO LATE.

16             THE COURT:  ABSOLUTELY.

17             MR. BUETHER:  SO YOU HAVE A VERY STRONG POINT ON IT.

18             THE COURT:  IF YOU WANT TO REENGAGE WITH THE MEDIATOR

19   YOU USED BEFORE OR NOT, I DON'T MAKE ANYONE DO ANYTHING.  AND

20   AS SOON AS MY ORDER GOES OUT, I WILL BE REMANDING IT AND HAVE

21   NO OTHER CONTROL OVER THE CASE.  AND ALTHOUGH -- I MEAN, IN A

22   SENSE, WHAT I HAVE TO DO NOW IS NOT ANYWHERE NEAR AS MUCH WORK

23   AS IT WAS THE FIRST TIME BECAUSE I'M JUST GOING TO STAY

24   CONSISTENT WITH THE ORDER, EVALUATE THE MODIFICATION AND THE

25   PLEADINGS AND BE ABLE TO MAKE THAT RULING.
```

1       SO I CERTAINLY ENCOURAGE THE PARTIES TO JUST -- AND YOU

2   ARE ALL HERE, MAYBE YOU CAN DISCUSS THAT IN THE HALLWAY AS TO

3   WHETHER THAT MAKES SENSE OR NOT.  OBVIOUSLY YOUR CLIENTS HAVE

4   TO BE WILLING TO ENTER MEDIATION IN GOOD FAITH FOR IT TO MAKE

5   ANY --

6       MR. GRAVES:  YOUR HONOR, WE DID TRY BEFORE WITH

7   JUDGE READ AMBLER.

8       THE COURT:  OH, JUDGE AMBLER.

9       MR. GRAVES:  BUT THE CASE IS RUN BY A LITIGATION

10  FUNDING ENTITY, AND IT'S IMPORTANT TO KNOW THAT.  IT'S PART OF

11  DYNAMIC HERE.

12      THE COURT:  I SEE.

13      MR. BUETHER:  WELL, SINCE WE GOT INTO THAT, AND I

14  WILL KEEP IT BRIEF, I DO BELIEVE AN IMPEDIMENT TO SETTLEMENT

15  HAS BEEN, AND I'M NOT CASTING ANY FAULT HERE AT ALL, SOME VERY

16  HARD FEELINGS BETWEEN THE COMPANY WAS CALLED MAX SOUND THAT

17  ACQUIRED THE RIGHT TO CONTROL THE LITIGATION BY FUNDING IT, AND

18  GOOGLE.

19      THERE WAS SOME OTHER LITIGATION BETWEEN THOSE TWO PARTIES,

20  PATENT LITIGATION UNRELATED TO THIS, AND THEN THIS DISPUTE

21  GOING OUT AT THE SAME TIME, AND THERE WERE SOME VERY HARD

22  FEELINGS BETWEEN BOTH SIDES.

23      MAX SOUND IS NO LONGER FUNDING THIS CASE.  SO IF THAT

24  MAKES GOOGLE FEEL ANY BETTER, HE IS OUT OF THAT PROCESS.

25      THE COURT:  IS SOMEONE ELSE FUNDING THE CASE?

1          MR. BUETHER:  YES, YOUR HONOR.

2       I MEAN, ORDINARILY I DON'T GET INTO THIS ON THE RECORD,

3    BUT IT IS NOT A BIG DEAL.

4          MR. CHRISTIAN:  WELL, AS WE ARE SITTING HERE TODAY,

5    WE HAVE BEEN FUNDING IT.

6          MR. BUETHER:  PERSONALLY, I HAVE BEEN FUNDING IT AS

7    WELL AS MR. CHRISTIAN.  ANYWAY, SO I THINK THAT MAY HAVE BEEN

8    AN IMPEDIMENT, IT STILL COULD BE A LINGERING IMPEDIMENT.  BUT

9    IT STILL IS CERTAINLY, HOPEFULLY WITH THAT CHANGE, MAYBE

10   SOMETHING COULD BE DONE THAT COULDN'T GO --

11         THE COURT:  IT'S ALWAYS INTERESTING.  AND LET'S GO

12   OFF-THE-RECORD FOR A SECOND.

13       (OFF-THE-RECORD DISCUSSION.)

14         THE COURT:  THANK YOU.  AS I SAY, I'M NOT MAKING ANY

15   ORDERS ON THAT, I JUST ALWAYS LIKE TO ENCOURAGE IT WHERE IT

16   SEEMS TO BE CRYING OUT.

17         MR. BUETHER:  WELL, WISDOM FROM THE BENCH IS ALWAYS

18   GOOD TO GET.

19         THE COURT:  FREE ADVICE, ANYWAY.

20         MR. CHRISTIAN:  THANK YOU, YOUR HONOR.  PLEASURE TO

21   BE HERE THIS MORNING.

22         MR. GRAVES:  THANK YOU, YOUR HONOR.

23       (THE PROCEEDINGS WERE CONCLUDED AT 10:17 A.M.)

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    _____

25    SUMMER A. FISHER, CSR, CRR
      CERTIFICATE NUMBER 13185           DATED: 2/26/19