**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ELI ATTIA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-06037-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE; DECLINING TO EXERCISE SUPPLEMENTAL JURISIDICTION; REMANDING ACTION**<br><br>[Re: ECF 127] |

Before the Court is Defendant Google LLC, Larry Page, Sergey Brin, Sebastian Thrun, and Eric "Astro" Teller (collectively, "Google") motion to dismiss Plaintiffs Eli Attia and Eli Attia Architect PC's (collectively, "Plaintiffs") Fifth Amended Complaint ("5AC"). ECF 127. Defendants Flux Data, Inc., Nicholas Chim, Jennifer Carlile, Augusto Roman, and Michelle Kaufmann (collectively, "Flux") join in Google's motion. ECF 128. The Court previously dismissed the five federal causes of action in Plaintiffs' Fourth Amended Complaint ("4AC"), brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(a)–(d). *See generally* 4AC Order, ECF 116. The Court held a hearing on the motion on February 14, 2019. For the reasons discussed at the hearing, and as stated below, Plaintiffs' 5AC RICO allegations fail to cure the deficiencies of its 4AC, and their Defend Trade Secrets Act claim fails for the same reasons. As such, Defendants' motion to dismiss is GRANTED WITH PREJUDICE. The Court DECLINES to exercise supplemental jurisdiction over the remaining state law claims and REMANDS this action back to start court.

///

///

## I. BACKGROUND[1]

The Court's previous order dismissing the 4AC ("4AC Order") provided a lengthy discussion of the procedural and factual backgrounds of this case. *See* 4AC Order at 2–10. In brief, Plaintiff Eli Attia is an architect who has spent much of his life developing a new architecture technology called "Engineered Architecture" or "EA." 5AC ¶¶ 1, ECF 120. Google, through its research and development facility, Google X, sought to partner with Mr. Attia to develop EA in July 2010. *Id.* ¶¶ 26–27. The parties signed a nondisclosure agreement ("NDA"). *Id.* ¶ 28. In September 2010, Google worked with Mr. Attia to develop a software system called "Project Genie" to implement EA. In January 2011, Google and Plaintiffs entered into an Inbound Services Agreement ("ISA") and an associated Statement of Work agreement ("SOW") with respect to Project Genie. *Id.* ¶ 37. Throughout this process, Mr. Attia disclosed his trade secrets to Google with the understanding that he would be compensated if the program were ultimately successful. *Id.* ¶¶ 31, 42–65.

Google in turn disclosed those trade secrets by filing patent applications with the U.S Patent and Trademark Office and showing a prototype of the technology to several industry leaders. *Id.* ¶¶ 69–72, 84, 86–87. The patent applications were published in July 2012. *Id.* ¶ 88. Then, Google squeezed Mr. Attia out of the project, all the while planning to use his trade secrets to create a new, successful venture: Vannevar Technology (which became Flux Factory, Inc.). *Id.* ¶¶ 76, 90. Google reneged on its agreement to compensate Mr. Attia for his trade secrets and proprietary information. *Id.* ¶ 88. Mr. Attia claims that Google has used this same scheme on other businesses to unlawfully steal their trade secrets and proprietary information. *See id.* ¶¶ 143–60, 166–70.

### A. 4AC Order

In its 4AC Order, the Court dismissed Plaintiffs' RICO claims as "entirely inadequate," noting that they would "require significant amendment in order to proceed." 4AC Order at 12. Specifically, the Court dismissed the claims for the following reasons, in part: (1) Plaintiffs did not

---

[1] Plaintiffs' factual allegations are taken from the operative 5AC and are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

have standing to bring a claim under RICO; (2) Plaintiffs had not alleged a "pattern of racketeering activity" under RICO; and (3) Plaintiffs' allegations as to conspiracy were woefully deficient.

First, the Court agreed with Defendants that Plaintiffs had not pled "they were victims of a timely predicate act" under RICO, namely the predicate act of criminal misappropriation of trade secrets. *See id.* at 12–21. Criminal misappropriation was not made a predicate act under RICO until the Defend Trade Secrets Act ("DTSA") was passed in May 11, 2016. Because this statutory amendment is not retroactive, Plaintiffs were "required to allege that they suffered injury proximately caused by trade secret theft by each Defendant after May 11, 2016." *Id.* at 13 (citing *Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620, 623-624 (6th Cir. 2001)). But Defendants' alleged relevant acts occurred in 2011 and 2012, including the "extinguish[ment]" of the trade secrets through Google's published patent applications. *Id.* at 13–14. Even so, Plaintiffs argued that they had standing because (1) Google is "estopped from using their unlawful publication of Plaintiffs' trade secrets in patent applications in 2012 to avoid liability for continued illegal use of the trade secrets after May 11, 2016"; and (2) Google's continued use of the trade secrets after May 11, 2016 made Google liable under the DTSA. The Court rejected both arguments.

As to estoppel, the Court held that estopping Google from arguing that Plaintiff had not pled a DTSA violation after May 2016 would "permit RICO to go back in time and apply retroactively, as a plaintiff could raise estoppel to render any wrongful act a predicate act, even if the RICO statute did not make it a predicate act until years later." *Id.* at 16. This result would be contrary to controlling law, which holds that RICO does not apply retroactively. The Court made clear that this ruling was circumscribed specifically to the somewhat unique, "extremely limited temporal circumstance[s]" of this case, in which the allegedly wrongful publication of the trade secrets occurred prior to the DTSA's amendment of RICO. Given these unique circumstances, barring an estoppel argument in this case would not create perverse incentives for defendants to wrongfully publish trade secrets to avoid liability under the DTSA as a substantive matter because the focus here is instead on whether the timing of the wrongful action could constitute a predicate act under RICO. *Id.* at 15–16. Moreover, Plaintiffs still had remedies at state law for the alleged

3

misappropriation in 2011 and 2012, even without valid RICO claims.

As to continued use, the Court held that the 2012 disclosure and extinguishment of Plaintiffs' trade secrets in the patent applications "occurred only once, and cannot amount to 'continued misappropriation' extending into 2016." *Id.* at 17. Quoting *Avago Techs. U.S. Inc. v. Nanoprecision Prods, Inc.*, No. 16-cv-3737-JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan 31, 2017), the Court recognized that there is no "authority suggesting that the DTSA allows a misappropriation claim to be asserted based on the continued use of information that was disclosed prior to the effective date of the statute." 4AC Order at 17; *see also* 4AC Order at 17 n.8 (citing *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009)). The Court noted that Plaintiffs had not "differentiate[d] between alleged trade secrets that were disclosed by Google in patent applications and 'extinguished' upon publication in 2012, and any remaining trade secrets that were not disclosed prior to the DTSA's effective date." *Id.* at 19. But even putting the extinguishment of the trade secrets to the side, the Court also held that Plaintiffs had failed to allege that Defendants actually used the alleged trade secrets after May 11, 2016. *Id.* at 18–20. One important defect on this front was that the 4AC had insufficiently tied Flux to Google and the individual Google Defendants with Google the entity. *See id.* at 19–20.

Second, as to a pattern of racketeering activity, the Court held that Plaintiffs' list of six disparate lawsuits where plaintiffs had sued Google for trade secret misappropriation was insufficient to demonstrate a pattern of racketeering. *See id.* at 24–27. The Court first noted that Plaintiffs had not satisfied Federal Rule of Civil Procedure 11's requirement that Plaintiffs' attorneys personally validate the truth of the allegations in those lawsuits. *Id.* at 24–25. The Court gave leave to amend for Plaintiffs to allege facts related to those lawsuits that Plaintiffs' attorneys had personally validated. The Court also noted that five of those six lawsuits had resolved favorably for Google. *Id.* at 26 n.12. Defendants also argued that Plaintiffs had not demonstrated "the required relationship and continuity among the predicate acts"—the six lawsuits—as required under RICO. *Id.* at 26. The Court deferred ruling on this issue, but noted it was "concerned . . . by the absence of allegations tying each defendant to the alleged predicate acts." *Id.* at 27. Specifically, "[a]lthough Google as a company is clearly the common thread throughout

4

the six lawsuits, there is no allegation that any other defendant engaged in the alleged wrongdoing in these cases." *Id.* The Court held that Plaintiffs would have to plead facts as to each individual Defendant to demonstrate that each Defendant engaged in a pattern of activity.

Finally, as to conspiracy, the Court held that the 4AC "contain[ed] no factual allegations that any Flux Defendant had knowledge and awareness of the alleged RICO scheme." *Id.* at 30. Moreover, Plaintiffs had not alleged that the Flux Defendants engaged in any predicate acts other than those alleged in the present case. *See id.* at 30. Ultimately, the conspiracy claims failed for the same reasons as the other RICO claims, as well as Plaintiff's failure to plead "plausible facts suggesting that Defendants were aware of the essential nature and scope of the RICO scheme, and otherwise agreed to participate in a scheme that meets RICO's substantive requirements—including a plausible pattern of racketeering activity." *Id.* at 31.

### B. 5AC

In their 5AC, Plaintiffs include allegations to address some, but not all, of the deficiencies the Court identified in its 4AC order.[2]

As an initial matter, Plaintiffs more clearly delineate the trade secrets at issue in this case. *See* 5AC at ¶¶ 44–65. These alleged trade secrets are completely parallel to what was disclosed in Google's published patent applications. *See id.* ¶¶ 69–73, 86, 141; Hearing Tr. at 5:20–23, ECF 149. And Plaintiffs now assert only two RICO causes of action: (1) under 18 U.S.C. § 1962(c), for operation of an enterprise through racketeering (against Google, Inc. and Flux Factory, Inc.); and (2) 18 U.S.C. § 1962(d) for conspiracy to violate § 1962(a) (use or investment) and § 1962(c) (operate an enterprise) (against all Defendants). *See id.* ¶¶ 143–77. They also assert a Defend Trade Secrets Act ("DTSA") claim, under 18 U.S.C. § 1836(b)(1) (against Google, Inc. and Flux Factory, Inc.). *Id.* ¶¶ 135–42.

Plaintiffs still propound a theory of liability under RICO and their new DTSA claim based on Google and Flux's continuing use of Plaintiff's trade secrets after May 2016. Specifically,

---

[2] Because neither party clearly lays out the key differences between the 4AC and the 5AC, the Court uses Plaintiffs' opposition as a guidepost for the allegations in the 5AC they believe are most relevant.

5

Plaintiffs allege that Defendant Teller approached Attia to partner with him, and then Google signed an NDA with Plaintiff before Attia pitched the technology to Defendants Page, Thrun, Teller and Brin. *Id.* ¶¶ 27–30. Defendant Page and Brin then authorized Google X to develop Plaintiffs' technology. *Id.* ¶ 31. The project became Project Genie. *Id.* ¶ 34. Plaintiffs then entered into contractual arrangements with Google, whereby Google promised to maintain confidentiality of Mr. Attia's trade secrets and proprietary information. *Id.* ¶¶ 35–38. Eventually, after publishing the alleged trade secrets in patent applications and beginning to push Plaintiffs out, Google formed Vennevar Technology Inc., which changed its name to Flux Factory, Inc. *Id.* ¶¶ 90, 91. Plaintiffs allege that Flux Factory, Inc. created several products after May 2016 that are enabled by Plaintiffs' trade secret information. *See id.* ¶¶ 95–105. And they allege that Google has "teamed up with Flux Factory" in a variety of ways to use and market the products after May 2016. *Id.* ¶ 139.

Plaintiffs also still allege that Google is estopped from arguing that it is not liable under RICO or the DTSA because it wrongfully published Plaintiffs' trade secrets in patent applications in 2012. *See id.* ¶¶ 66–73; 84–91. "Although Mr. Attia was aware in 2011 that Google was filing applications using his trade secrets and other proprietary information," he claims Google's publication of this information was wrongful because he only "conditionally authorized" such disclosure, "on the condition that Google compensate him" as provided for in their contract, and yet Google never adequately compensated him. *Id.* ¶¶ 87–88. Plaintiffs allege that this publication "extinguish[ed] [the secrets'] trade secret status." *Id.* ¶ 88.

As to the alleged pattern of RICO activity, the 5AC alleges that Google has used the same scheme with other businesses—inducing them to share their proprietary information and then wrongfully using or disclosing it without compensating the business. *See id.* ¶¶ 148, 154–64. The 5AC abandons most of the previous lawsuits cited as evidence of a pattern of racketeering and now cites only two such lawsuits: (1) *Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1187 (Fed. Cir. 2018), a copyright infringement case; and (2) a case involving VSL Communications, LTD, relating to trade secret misappropriation. *Id.* ¶¶ 154–64. Plaintiffs do not cite any other predicate acts that may reflect a "pattern" of activity, besides Defendants' alleged actions here.

6

Finally, as to a conspiracy, Plaintiffs allege that Flux Factory and the Google Defendants (including Google and the individual Defendants), conspired to unlawfully use Plaintiffs' trade secrets through Google's licensing the patents embodying the trade secrets to Flux Factory. *Id.* ¶ 93. The 5AC alleges that Flux Factory is merely a "reconstitution and continuation" of Project Genie, with several of the same individuals working at each, including Defendants Teller, Chim, Carlile, Roman, and Kaufmann. *Id.* ¶ 95. Because Flux is "nothing more than a spin-off of Google's Project Genie," the Flux Factory Defendants are alleged to have been "fully aware that the ideas and technology of Project Genie were derived largely from Mr. Attia's trade secrets." *Id.* ¶ 95; *see also id.* ¶ 164.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

Plaintiffs have essentially conceded that their 5AC does not cure the deficiencies in the 4AC identified by the Court in its 4AC Order. *See* ECF 121 ("In view of the Court's Motion to

Dismiss Order and for purposes of this stipulation and any resulting appeal only, Plaintiffs stipulate that, under the Court's Motion to Dismiss Order, Plaintiffs cannot prevail on their claims against Defendants Google and Flux in the Fifth Amended Complaint under the DTSA and RICO."). The Court agrees.

First, Plaintiffs do not have standing to bring their RICO and DTSA claims. As set forth in the 4AC Order, the DTSA was not enacted until May 11, 2016. Upon its enactment, criminal misappropriation of trade secrets became a predicate act under RICO. *See* 18 U.S.C. § 1961(1)(B). But Google allegedly misappropriated Plaintiffs trade secrets and published them in 2012, four years before the DTSA's enactment. Neither a theory of estoppel nor continued use can convert these 2012 actions into a DTSA violation or a RICO predicate act.

Allowing estoppel here would give RICO and the DTSA retroactive effect, a result that is contrary to existing law. *See Snowden*, 237 F.3d at 623–24; *Avago*, 2017 WL 412524, at *8; 4AC Order at 16–17. Contrary to Plaintiffs' arguments, Opp. at 4–6, ECF 142, barring a RICO action in these "extremely limited temporal circumstance[s]" does not shield Defendants from liability, 4AC Order at 16—Defendants still face liability under the state law claims Plaintiffs bring here, namely trade secret misappropriation and breach of contract. Indeed, it would be *in*equitable to allow RICO or the DTSA to apply retroactively contrary to Congressional intent.

Likewise, Plaintiffs continued use theory fails as a matter of law. As of the date Google's patent applications were published, Plaintiffs trade secrets were "extinguish[ed]." *Id.* ¶ 88. Any alleged misappropriation of this information after this publication cannot constitute trade secret misappropriation. *See Avago*, 2017 WL 412524, at *8; *see also Pawelko v. Hasbro, Inc.*, 2018 U.S. Dist. LEXIS 196741, *22, 2018 WL 6050618 (D.R.I. Nov. 19, 2018). Now that Plaintiffs have made clear that all of the alleged trade secrets at issue here were published in 2012, they cannot rely on a continued use theory for alleged misappropriation by Defendants of those published secrets after 2012. Plaintiffs' newly cited cases do not stand for the contrary. *See* Opp. at 2–3 (citing *123 Exteriors, Inc. v. North Star Exteriors, LLC*, No. 17-cv-4337, 2018 WL 3642221 at *6–*7 (E.D. Penn. 2018); *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. 16-cv-2499, 2017 WL 1105648, at *4 (E.D. Penn. Mar. 24, 2017); *Teva*

*Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674–75 (E.D. Penn. 2018)). In none of these out-of-circuit cases did the defendant publicly share the secrets at issue or allege that the trade secret had lost its status as a trade secret. Thus, Plaintiffs do not have standing to bring their RICO and DTSA claims.

Second, Plaintiffs did not cure the identified deficiencies in their "pattern of racketeering" allegations. A "pattern of racketeering activity" requires commission of at least two enumerated predicate offenses within a ten-year period. 18 U.S.C. § 1961(1), (5). The Supreme Court has made clear that in addition to the requisite number of predicate acts, the plaintiff must show that the predicates are related and "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The latter concept, "continuity," refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. "Establishment of a pattern 'requires the showing of a relationship between the predicates and of the threat of continuing activity.'" *Howard v. Am. Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000).

In its 4AC Order, the Court declined to rule on whether six lawsuits could form the foundation of a pattern of racketeering, especially with respect to all of the non-Google-LLC Defendants because they seemingly were not involved in those lawsuits. Now, Plaintiffs rely on only two lawsuits[3], one of which was a copyright-infringement case. *See id.* ¶¶ 154–64. Plaintiffs claim that these cases demonstrate that "the Google Defendants' modus operandi/repeated method of commission is to induce inventors to reveal their proprietary information through NDAs then wrongfully use or publish the proprietary information to the exclusion of the inventors." Opp. at 7. But their allegations with respect to the *Oracle* case do not actually describe such a modus operandi, mentioning only failed license negotiations, without mention of an NDA. *See id.* ¶¶ 150–53. Though the allegations relating to VSL are similar to those here, the Court cannot say, on these alleged facts alone, that there is a "threat of continuing activity" of this nature by Google.

---

[3] In their opposition, Plaintiffs also reference *Space Data Corp. v. Alphabet, Inc. and Google, LLC*, No. 5:16-cv-03260-BLF, 2018 WL 5816403 N.D. Cal. 2018), but they do not include allegations with respect to this case in the 5AC.

9

*Howard*, 208 F.3d at 749 (quoting *H.J.*, 492 U.S. at 239). The alleged conduct is not sufficiently related because it does not "embrace[] criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* Indeed, Plaintiffs do not cite any cases in support of their argument in which two isolated lawsuits served as the foundation for a pattern of racketeering. Defendants' point is well taken that it would set a dangerous precedent to allow two seemingly disparate lawsuits against one of the world's largest companies to establish a "pattern of racketeering." Mot. at 9. Google is sued so frequently that it is hard to imagine a scenario in which a plaintiff could not cobble together two seemingly similar lawsuits to support allegations of racketeering against the company. And even if Plaintiffs' allegations were sufficient to establish a pattern of racketeering against Google LLC, they do not allege that either of these lawsuits involved any of the Defendants except Google LLC—such that no pattern is established as to the individual Defendants or Flux Factory. *See* 4AC Order at 27, 31. Such allegations cannot substantiate a RICO claim. And because Plaintiffs fail to plead an underlying RICO violation, their conspiracy claim fails as well.

Plaintiffs' failure once again to allege claims under RICO or the DTSA demonstrates that any further amendment in this case would be futile. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). Having now dismissed each of Plaintiffs' federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim [brought under supplemental jurisdiction] if . . . the district court has dismissed all claims over which it has original jurisdiction."). This case belongs in state court, where the litigation proceeded for years before making its way to this Court.

## IV. ORDER

Based on the foregoing, the Court GRANTS WITH PREJUDCE Defendants' motion to dismiss Plaintiffs' federal law claims. The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state law claims, and thus REMANDS this action back to state court.

**IT IS SO ORDERED.**

Dated: March 19, 2019

_____
BETH LABSON FREEMAN
United States District Judge